GENERAL OUTDOOR ADVERTISING CO., INC., & others *vs.* DEPARTMENT OF PUBLIC WORKS.

MARY J. DONNELLY *vs.* SAME.

(Nine other suits between the same parties.)

THE O. J. GUDE COMPANY *vs.* SAME.

THE HATHAWAY ADVERTISING COMPANY *vs.* SAME.

GENERAL OUTDOOR ADVERTISING CO., INC., & others *vs.* SAMUEL HOAR & others.

CHARLES I. BRINK *vs.* DEPARTMENT OF PUBLIC WORKS.

Suffolk. November 20, 21, 22, 1933. — January 8, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Advertising. Billboard. Constitutional Law,* Outdoor advertising, Police power, Separation of powers of government, Due process of law, Equal protection of the law. *Municipal Corporations,* By-laws and ordinances. *License. Equity Pleading and Practice,* Master: rule, findings, report of evidence, recommittal, report. *Evidence,* Relevancy, Competency, Judicial notice. *Jurisdiction. Words,* "May be regulated and restricted," "Aesthetic consideration."

Art. 50 of the Amendments to the Constitution of the Commonwealth confers upon the General Court plenary power to regulate and restrict advertising on private property within public view as well as in public ways and in public places.

Under said art. 50 the General Court may make enactments resulting in the prohibition of advertising on private property within public view in places, areas, divisions, localities or districts; but under present conditions that article does not give the General Court power to prohibit such advertising entirely throughout the Commonwealth: in order to be valid, the regulations and restrictions must have some reasonable basis and be designed to accomplish a permissible end.

The provisions of G. L. (Ter. Ed.) c. 93, §§ 29–33, which constitute the statutory provisions enacted pursuant to said art. 50 as to "billboards, signs and other advertising devices" "on private property within

public view of any highway, public park or reservation," all relate to reasonable regulation and restriction of advertising and are within the authority of said art. 50.

The circumstance, that rules and regulations finally promulgated by the department of public works under G. L. (Ter. Ed.) c. 93, § 29, after the hearings required by the statute differed from some previously issued and from a suggested revision which formed the starting point of the hearings, did not affect the validity of those ultimately formulated.

Certain persons and corporations engaged in the business of outdoor advertising, in seeking by suits in equity to enforce what they contended and in substance asserted was their constitutional right to conduct their businesses as they had been accustomed to do without interference from the department of public works through its enforcement of rules and regulations adopted under said art. 50 and the enabling statutes following it, were not seeking the enforcement of a natural right, but in effect the superadded claim to use private land as a vantage ground from which to obtrude upon all the public travelling upon highways, whether indifferent, reluctant, hostile or interested, an unescapable propaganda concerning private businesses with the ultimate design of promoting patronage of such businesses.

Findings by a master based in part upon a view will not be reversed when the evidence is not reported by him in full.

The suits in equity above described were consolidated into a single cause for hearing and were referred to a master under a rule "to hear the parties and their evidence, and to report his findings . . . together with such facts and questions of law and portions of the testimony as any party may in writing request." The plaintiffs, after receiving a copy of the draft report, filed a large number of requests for report of facts, questions of law and portions of the testimony. The master filed a voluminous report, including a large amount of evidence; and the plaintiffs filed numerous objections and a detailed motion, referring to many of their objections, seeking a recommittal of the report for a report of evidence concerning numerous findings and of rulings. An interlocutory decree was entered that the motion be "granted as a matter of discretion without ruling upon any question of law," the decree containing no specifications nor details of direction to the master. There were further hearings, a supplemental report, objections thereto and a second motion to recommit, which was denied. From such denial the plaintiffs appealed. The master refused a request by the plaintiffs that he report "any other testimony — if such there be — upon which he bases" certain findings. The case was reserved for determination by this court. It appeared from the reports that the master had taken extensive views throughout the Commonwealth, and that all the evidence was not reported. The master stated in his reports that his findings were made upon all the evidence. *Held,* that

(1) The refusal of the master to comply with the request to report "any other" evidence did not import that there was no such evidence, and was proper: under the rule of reference the plaintiffs had no right to shift upon the master the burden of sifting out and reporting all

the evidence supporting the findings in question; they had a right only to the report of testimony specified by them;

(2) The brief decree merely granting the first motion to recommit the report, without making any ruling of law, although general in terms, could not rightly be construed as a direction to comply with every one of the many matters referred to therein;

(3) Upon the record, the master's findings should all be considered in the light of such portions of the testimony as were reported and such exceptions as were taken, but in the main the general rule that, where the evidence is not reported fully by him, findings by a master based in part upon oral testimony must be accepted as true unless mutually inconsistent and plainly wrong, should be followed.

Rules and regulations promulgated by the department of public works under said art. 50 and the statutes above described were an exercise of the police power.

A finding by the master in the suits in equity above described, that certain rules and regulations promulgated by the department of public works under said art. 50 and enabling statutes tended to prevent distraction of the attention of drivers of automobiles and to promote public safety upon highways, was *held* to have been warranted, and the facts thus found must be accepted as true even though no direct testimony was introduced that particular accidents were due to inattention of drivers of automobiles caused by the distracting influence of pictures, embellishments and words on signs or billboards; the views taken by the master might have been convincing on this point.

Such rules and regulations of advertising devices, even to the extent of prohibition, as had a reasonable tendency to prevent obstructions to traffic or to facilitate safety of travel, were *held* to be permissible and a proper exercise of the police power.

Protection of travellers upon highways from the intrusion of the public announcements thrust before their eyes by signs and billboards was *held* to be a permissible end and a reasonable basis for such rules and regulations.

The right of the traveller upon the highways to a peaceful and unannoyed journey, so far as concerns advertising on private land, is recognized by said art. 50; to adjust the conflicting interests of the public and of the individual is a proper legislative function.

Certain rules and regulations promulgated by the department of public works under the authority above described were *held* not to rest primarily upon "aesthetic considerations" in the sense in which that phrase has been used to overturn legislative enactments, but to be designed to promote safety of travel upon the highways and enjoyment of resort to public parks and reservations, to shield travellers upon highways from the unwelcome obtrusion of business appeals, to protect property from depreciation, and to make the Commonwealth attractive to visitors from other States and countries as well as to her own citizens.

Said art. 50 includes within its design and scope protection of scenic beauty from the intrusion of advertising on private property within public view.

In view of the essential qualities of the business of outdoor advertising conducted by the plaintiffs in the suits in equity above described, it was *held* that it is within the reasonable scope of the police power to preserve from destruction the scenic beauties bestowed on the Commonwealth by nature in conjunction with the promotion of safety of travel on the public ways and the protection of travellers from the intrusion of unwelcome advertising, and that therefore no constitutional right of the plaintiffs was violated by an administration of the rules and regulations promulgated by the department of public works to the end that the scenic beauty of the Commonwealth be protected and preserved.

It *was stated* that, even if such rules and regulations concerning billboards and other advertising devices did not rest upon the bases of promoting the safety of public travel and of protecting travellers from undesired intrusion, the preservation of scenic beauty and places of historical interest would be a sufficient support for them as a proper exercise of the police power.

The rules and regulations promulgated by the department of public works in January, 1924, under said art. 50 and statutes enacted pursuant thereto were *held* not to be prohibitory in form, substance, effect, or operation, rather than regulatory.

It appeared in the suits in equity above described that the department of public works did not deny that the rules and regulations so promulgated by it prohibited the conduct of the outdoor advertising business by signs and billboards located as most of them then were located and required the business to be carried on by signs and billboards located on less conspicuous sites; but there was no finding by the master as to the possible number of locations conforming to the rules and regulations as compared with existing sites, and he found against a contention by the plaintiffs that, owing to the methods of business theretofore employed by them and to the demands of their customers, it would be impossible to conduct their business at a profit in conformity to the rules and regulations and they would be driven out of the advertising field by the enforcement thereof. The evidence was not reported. It *was stated* that the plaintiffs would not be entitled to relief even if their business on the lines theretofore conducted would not be profitable when conducted in conformity to the rules and regulations.

There being nothing in the record before this court upon the reservation of the suits in equity above described to require the conclusion that there was unfair discrimination or failure to exercise an honest judgment in the administration of the rules and regulations in question, it must be presumed that they were administered lawfully and in good faith.

The rules and regulations above described were *held* not to be invalid on the ground that the issuing and renewal of licenses depended upon the caprice of any individual or board.

One of the rules and regulations above described read as follows: "No permit will be granted for the location or maintenance of billboards, signs or other advertising devices near certain public ways where,

in the opinion of the Division, having regard to the health and safety of the public, the danger of fire, and the unusual scenic beauty of the territory, signs would be particularly harmful to the public welfare." *Held*, that the words "unusual scenic beauty of the territory" were sufficiently definite to furnish in advance a standard to apply in determining applications for permits.

The words "business character" as used in certain of said rules and regulations to describe districts excepted from their operation were sufficiently definite, and a provision that the determination of what were such districts should be made by the department of public works did not repose power in that department to act arbitrarily or to refuse to recognize as such what was in truth a district of business character; the decision of the department was subject to judicial review.

Certain acts of the department of public works in the administration of such rules and regulations were *held*, upon the record of the suits in equity above described, not to have been shown to be unreasonable.

In a regulation, "No permits will be issued for outdoor advertising in any location which is within three hundred (300) feet of any public park or reservation, if within view of any portion of the same," the words "any public park or reservation" were *held* to be sufficiently definite as fixing the rights of parties.

Evidence, offered before the master hearing the suits in equity above described, to show the economic value of the outdoor advertising industry to the end that the court might weigh disadvantages resulting to the community from enforcing the regulations against the advantages accruing to the community from that industry as theretofore conducted and might decide which was more important and which therefore ought to prevail, rightly was excluded: the court had no jurisdiction to weigh in the balance the economic advantage or disadvantage of the rules and regulations adopted nor to adjudicate which was in the public interest, that being a prerogative of the General Court.

The validity and meaning of such rules and regulations must be determined according to their words, and could not be affected by the reasons honestly motivating those who framed them.

Individual opinions of members of the department of public works as to scenic beauty and its importance to the general welfare were of no consequence as matter of law in determining the issues presented by the suits in equity above described.

It was reasonable and valid to provide that licenses and permits granted under the rules and regulations above described were revocable and should expire annually.

Said rules and regulations were within the scope of the enabling statutes and were not unreasonable on the grounds on which they were assailed in the suits in equity above described or in that they affected the rights and property of the plaintiffs; and they were protected by said art. 50.

A certain by-law of the town of Concord, the constitutionality of which was the subject matter of one of the suits in equity above described, was *held* not to be inconsistent with the provisions of the governing

statute or of the rules and regulations promulgated by the department of public works, but to be in harmony with them, and expressly permitted by G. L. (Ter. Ed.) c. 93, § 29, although it made no provision for the issuance of licenses and permits by officers of the town, but required a permit by the department of public works for every advertising device, and made no provisions nor exceptions touching business districts, it being a matter of common knowledge that Concord has but a small area devoted to strictly business activities and no area where there is business congestion, but on the contrary has exceptional attractiveness to the general public.

Refusal to renew licenses for advertising devices which violated the provisions of the by-law above described was not violative of any constitutional right of the plaintiffs.

The plaintiff in one of the suits in equity above described in October, 1926, was granted a permit to erect and maintain an advertising sign of steel construction on the roof at the rear of a building on Beacon Street in Boston, near the State House, facing Boston Common, abutting the Granary Burying Ground, in a district of a business character, and the next year did erect a skeleton electric sign of steel, eighty-five feet long and sixty-five feet high, securely fastened to the building, distant four hundred feet from the boundary of a public way, with its bottom one hundred feet from the ground, in a dominating and conspicuous location, commanding a view from Boston Common and the Public Garden as well as from many streets, plainly visible by day for a long distance and at night for a radius of miles, and at night brilliantly illuminated by colored lights in a spectacular manner and animated by electrical devices forming words and causing continuous changes in the display. In May, 1927, one who had made a contract with the plaintiff for use of the sign hired a single room in the building, which he used as a meeting place for salesmen and their prospective customers. The permit for the sign by its terms expired in June, 1927, and a renewal was refused by reason of a vote in the department of public works resting solely on the grounds of taste and fitness. *Held,* that

(1) The sign was within the scope of the terms of said art. 50 as to regulation and restriction of "advertising . . . on private property within public view";

(2) The sign did not "advertise or indicate either the person occupying the premises in question or the business transacted thereon" and hence its maintenance was not protected by G. L. (Ter. Ed.) c. 93, § 30;

(3) The permit, when granted in 1926, was accepted by the plaintiff subject to all the limitations contained in it by reason of the governing statute and rules and regulations, including the provision for expiration at a fixed time and the necessity for renewal; the original granting of the permit carried no implication of law that it would be renewed;

(4) Refusal to renew the permit on grounds of fitness and taste was within the scope of the authority conferred on the department of public works by the statute and the rules and regulations;

(5) Such refusal violated no constitutional rights of the plaintiff.

That beautiful scenery is of economic value to the Commonwealth may be a subject of judicial notice.

Under the rule referring the suits in equity above described to the master, which required him to report his findings "together with such facts and questions of law and portions of the testimony as any party may in writing request," the plaintiffs, upon proper request, had a right to have the master report all questions of law which arose in the course of his finding the facts, but he was not required to formulate legal theories and reasoning processes which guided him in admitting or excluding evidence, nor to pass upon legal questions connected with the case on which his opinion might be asked, nor to state, summarize or discuss the legal issues upon which the court must pass.

The fact that advertisers on a national scale were an important factor in the businesses of the plaintiffs in the suits in equity above described having been established by the facts found, further facts as to the precise extent of the business done with such advertisers and as to their character were not pertinent to the issues.

Opinion evidence touching the probability that patronage would be withdrawn from the plaintiffs if they conformed to the rules and regulations properly might be excluded as matter of discretion at the hearing of the suits in equity above described.

The extent to which, at the hearing of the suits in equity above described, evidence pertaining to the space available for outdoor advertising in conformity with the rules and regulations, and evidence as to the estimated expense of readjusting the advertising devices to meet the requirements of the rules and regulations, would be received, was discretionary with the master; and the force and effect of such evidence were to be determined by the master as matters of fact.

It is not a constitutional objection to police regulations otherwise valid that a particular business will not pay when conducted in conformity to their provisions. Per RUGG, C.J.

At the hearing of the suits in equity above described, there was no error in the admission of testimony by engineers, who had made special studies as to traffic hazards, as to their observations and opinions touching the effect of billboards on the safety of travel on highways, nor in the exclusion of opinion testimony on that subject by witnesses connected with accident insurance companies, although they were allowed to testify concerning what their records showed as to causes of accident.

In the suits in equity above described, brought to test the constitutionality of the statutes and rules and regulations involved, the question, whether the records of the defendants of their reasons for their decisions with respect to refusals to grant permits for new locations for advertising devices or renewal permits for existing locations were adequate to protect the rights of the plaintiffs, did not need to be decided: different proceedings might be brought to rectify particular errors committed by the defendants.

It is settled by decisions of the Supreme Court of the United States that billboards and like advertising devices upon private property have such demonstrated potentialities for harm to the general welfare that

they may be prohibited in certain localities by public authority and are appropriate subjects for regulation and restriction.

The circumstance, that in the record before this court of the suits in equity above described there were shown but few instances where billboards had been used to the public harm by the evil minded, was not decisive.

The record of the suits in equity above described disclosed that no rights secured to the plaintiffs by the Fourteenth Amendment to the Constitution of the United States had been violated.

The classification, as subjects for regulation by public authority, of the business of operating billboards and other outdoor devices for advertising and of those carrying on such business, as distinguished from those not engaged in that business and advertising only temporarily and from advertising devices such as are exempted from regulation in G. L. (Ter. Ed.) c. 93, §§ 30, 32, is warranted and permissible and does not violate the provisions of the Fourteenth Amendment to the Constitution of the United States guaranteeing equal protection of the law.

FIFTEEN BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk,* and described in the opinion.

The suits were consolidated and were referred to a master. The rule of reference, proceedings before the master, his findings and reports, motions for recommittal and action of the court thereon, and objections of the parties to the master's reports, are described in the opinion.

The suits were reserved by *Crosby,* J., for determination by the full court.

*L. A. Mayberry,* (*G. L. Mayberry, J. B. Abrams, S. Abrams, A. L. Brown,* & *W. E. Beehan* of New York, with him,) for the plaintiffs.

*J. S. Eastham,* Special Assistant Attorney General, & *S. Hoar,* (*L. Wheeler, Jr.,* & *G. K. Gardner* with him,) for the defendants.

RUGG, C.J. These are fifteen suits in equity. The plaintiffs are resident and nonresident individuals, firms and corporations, all licensed under G. L. (Ter. Ed.) c. 93, § 29, and engaged in the business of outdoor advertising. That business is the procurement of locations on private

---

* The dates on which the bills were filed are as follows: The first eleven cases on June 11, 1925; the twelfth on June 23, 1925; the thirteenth on July 21, 1925; the fourteenth on November 3, 1925; and the fifteenth on September 30, 1927.

property within public view for signs, billboards and other devices which the plaintiffs erect and maintain and upon which they rent space for advertising purposes to manufacturers, merchants and others, many of whom are doing business in other States as well as within the Commonwealth. The defendants in fourteen suits are the commissioner and associate commissioners who have supervision and control of the department of public works of the Commonwealth. (See G. L. c. 16, §§ 1, 2, c. 93, § 29; St. 1927, c. 297; G. L. [Ter. Ed.] c. 16, § 2, c. 93, § 29.) The one of these suits by the plaintiff Brink relates to an electrical sign on the roof of a building near the State House and the Common in Boston; the others relate to billboards and advertising devices in different parts of the Commonwealth. In the remaining suit the selectmen and other officers of the town of Concord are the defendants. The object of the several suits is to obtain decrees to the effect that all and certain parts of the rules and regulations promulgated by the department of public works and a certain by-law adopted by the town of Concord restricting outdoor advertising upon private property within public view are void, unconstitutional and of no effect. There are no averments concerning advertising by the plaintiffs within public ways or in public places, nor as painted or affixed upon any rock, tree or pole; therefore, those subjects need not be considered; see *Commonwealth* v. *McCafferty*, 145 Mass. 384; *Commonwealth* v. *Haffer*, 279 Mass. 73; *Fifth Avenue Coach Co.* v. *New York*, 221 U. S. 467. There are adequate allegations of impending property damage to the plaintiffs likely to arise from the enforcement of the rules and regulations and the by-law. *Shuman* v. *Gilbert*, 229 Mass. 225, 227–228. There are prayers for full injunctive relief to restrain the defendants from interfering in any way with the business of the plaintiffs. Injunctions were issued, pending the trial and final disposition of the suits, against the disturbance of any existing signs, billboards and other advertising devices of the plaintiffs.

The decision of the principal issues rests upon the meaning of art. 50 of the Amendments to the Constitution of

Massachusetts, the scope of statutes enacted under the power conferred by that amendment and the validity of rules and regulations promulgated by the department of public works and of a by-law adopted by Concord pursuant to such statutes. Other questions arise respecting the action of the commissioners of the department of public works and as to the conduct of the hearings by the master to whom the cases were referred.

1. Art. 50 of the Amendments to the Constitution (hereafter called art. 50), ratified by the people on November 5, 1918, is in these words: "Advertising on public ways, in public places and on private property within public view may be regulated and restricted by law." This amendment declares a fundamental principle as to the powers of government. It does not contain a specification of details. It is to be interpreted as a part of the Constitution of a State sovereign in all its prerogatives except those surrendered to the Federal government under the Constitution of the United States of America and its Amendments. It is a grant from the people. It is to be construed in the light of the circumstances under which it was framed, the causes leading to its adoption, the imperfections hoped to be remedied, and the ends designed to be accomplished. *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 524. Its words are to be given their natural and obvious sense according to common and approved usage at the time of its adoption. *Attorney General* v. *Methuen,* 236 Mass. 564, 573. *Gibbons* v. *Ogden,* 9 Wheat. 1, 188. *Hodges* v. *United States,* 203 U. S. 1, 16. It is permissible to examine the proceedings of the convention by which the amendment was proposed in order to understand the attendant conditions and the attitude of the members, although not for the purpose of controlling the plain meaning of the language. *Loring* v. *Young,* 239 Mass. 349, 368, and cases cited. *United States* v. *Shreveport Grain & Elevator Co.* 287 U. S. 77, 83.

Plenary power to regulate and restrict advertising on private property within public view, as well as in public ways and in public places, is conferred upon the General Court by art. 50. The words used to confer that power

are of broad import. Plainly, advertising of the kind there described has been designated by constitutional mandate as a subject of regulatory and restrictive legislation. No restraints on that power are expressed in the article. Every consideration for the promotion of the public interests which in view of its sweeping terms may reasonably be given weight by a lawmaking body may be taken into account and be a factor in framing regulations or restrictions. It appears from the Debates of the Constitutional Convention of 1917–1918, vol. III, pages 621–672, that the resolution for this amendment as originally presented included also the power to prohibit, as well as to regulate and restrict, outdoor advertising; on page 661 the meaning of the words "regulate" and "restrict" as including for practical purposes the power to prohibit was pointed out. The power to prohibit was ultimately omitted. Those debates show that one, if not the main, purpose of the proponents of art. 50 was to set aside and overcome the effect of the decision in *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348, with all its implications as to deficiency of legislative control over outdoor advertising on privately owned land within public view. That case was a complaint for the violation of a rule made by the metropolitan park commission pursuant to an enabling statute forbidding a business sign within such distance of any public park or parkway as to render its words plainly visible to the naked eye within the park or parkway without the written permission of the commission, save that the rule did not apply to a sign by the owner or occupant of land relating exclusively to the property on which it was placed or the business conducted thereon or the person conducting the same. The decision by a majority of the court was that since "At most the presence of signs, posters and advertisements upon lands or buildings near a public park or parkway is an offence against good taste, and in that way alone detracts from the pleasure only of the frequenters of such places," the ordinary and remunerative use of lands for such purpose could not be taken without compensation under "the provisions of our Constitution" and that the enforcement

of the rule would amount to such a taking and hence was invalid. The decision rests upon an interpretation of the Constitution of this Commonwealth and contains no reference to the Constitution of the United States.

The power "to regulate commerce with foreign nations, and among the several states" is conferred upon Congress by art. 1, § 8, of the Constitution of the United States. It was said respecting that power in *United States* v. *Hill,* 248 U. S. 420, 425: "That regulation may take the character of prohibition, in proper cases, is well established by the decisions of this court. *Lottery Case,* . . . [188 U. S. 321]; *Hipolite Egg Co.* v. *United States,* 220 U. S. 45; *Hoke* v. *United States,* 227 U. S. 308; *Caminetti* v. *United States,* 242 U. S. 470; *Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311; *Hammer* v. *Dagenhart,* 247 U. S. 251, 270, 271." *Gibbons* v. *Ogden,* 9 Wheat. 1, 187, 193, 196. There are decisions of like nature as to the meaning of the word "regulate" in statutes. *Attorney General* v. *Boston,* 142 Mass. 200, 203. *Burgess* v. *Mayor & Aldermen of Brockton,* 235 Mass. 95, 102. *Ahmedjian* v. *Erickson,* 281 Mass. 6, 11. It was said in *Opinion of the Justices,* 232 Mass. 605, 610, respecting the meaning of art. 50, that the "words 'regulated and restricted' do not confer power to prohibit utterly and without bound but only to establish reasonable limitations." The effect of art. 50 is to enable the prohibition of advertising on private property within public view in places, areas, divisions, localities or districts, but under present conditions not generally throughout the Commonwealth. The result is that *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348, does not now state the constitutional limitation upon legislative power to regulate advertising on private property within public view. That power has been greatly extended. Preëxisting conceptions of the police power have been expanded respecting governmental control over advertising on private property within public view. The intent of the framers of art. 50 is further shown by the fact that a motion to amend its terms by inserting a proviso to the effect that no person should be "deprived of the use of his property without just

compensation" was rejected. Debates of the Constitutional Convention of 1917–1918, vol. III, pages 621, 672. The people have declared by approving and ratifying art. 50 that private interests cannot stand in the way of its declaration of the rights of the public and the power of the government. Its words and phrases must be given effect in conformity to their normal and ordinary meaning. *United States* v. *Sprague*, 282 U. S. 716, 731. *Attorney General* v. *Methuen*, 236 Mass. 564, 573. To a far greater extent than theretofore "good taste" and the preservation of scenic beauty may be accorded weight in determining how such advertising may be "regulated and restricted by law." In appropriate instances these considerations may be decisive. To give to art. 50 a narrower scope would attribute to it little, if any, force; to pursue such a course would not be permissible in interpreting a clear mandate thus placed in the Constitution. Action under art. 50 is not confined by views formerly entertained as to powers over outdoor advertising but may embrace everything within the sweep of the words of that article. Its words and the debates of the convention by which it was framed are in harmony to the effect that it has no constricted meaning but is to be given a broad and natural construction.

2. Pursuant to art. 50 statutes have been enacted, now found in G. L. (Ter. Ed.) c. 93, §§ 29–33, both inclusive. (These sections will be used for convenience; they do not differ in substance from earlier enactments governing the present cases; G. L. c. 93, §§ 29, 30, 31, 32, 33; St. 1924, c. 327, amending § 29; St. 1924, c. 334, amending § 30; St. 1924, c. 490, adding § 30A after § 30; St. 1924, c. 85, amending § 32; St. 1931, c. 394, §§ 96, 97, amending §§ 29, 30A. See also G. L. c. 85, § 8, unchanged in G. L. [Ter. Ed.] c. 85, § 8.) By § 29 the department of public works is required to make, and is given power to amend or repeal, "rules and regulations for the proper control and restriction of billboards, signs and other advertising devices . . . on private property within public view of any highway, public park or reservation," with an exception not here material. The initial statute commanded the department of public

works to make such rules and regulations within sixty days of its passage. St. 1920, c. 545, § 1, approved on May 27. Further provisions are that such rules and regulations may require that the billboards, signs and other devices be licensed and that fees be prescribed. "Before establishing or amending rules or regulations under this section, the department shall hold duly advertised public hearings in Boston and elsewhere within the commonwealth as it deems necessary or expedient. Cities and towns may further regulate and restrict said billboards or other devices within their respective limits by ordinance or by-law not inconsistent with sections twenty-nine to thirty-three, inclusive, or with said rules and regulations." By § 30 "No person, firm, association or corporation shall post, erect, display or maintain . . . on private property within public view from any highway, public park or reservation any billboard or other advertising device . . . unless such billboard or device conforms to the rules and regulations and ordinances or by-laws established under the preceding section; provided, that this section shall not apply to signs or other devices erected and maintained in conformity with law and which advertise or indicate either the person occupying the premises in question or the business transacted thereon, or advertise the property itself or any part thereof as for sale or to let and which contain no other advertising matter." By § 30A unauthorized billboards, signs and devices erected after August 20, 1920, are declared nuisances. Power to abate the same is vested in the department of public works. By § 31 jurisdiction in equity is conferred on the courts to restrain the erection or to order the removal of unauthorized billboards, signs and devices. By § 32 an exception is made in favor of some advertisements on or in railroad property. By § 33 penalties for violation of any rule, regulation, ordinance or by-law established under § 29 are prescribed.

No discussion is required to demonstrate that these statutory provisions fall well within the authority of art. 50. They all relate to reasonable regulation and restriction of advertising. *Opinion of the Justices,* 232 Mass. 605. The legislative power is ample to confer upon a State board or

a municipality authority to establish rules and regulations touching the subject. *Opinion of the Justices*, 138 Mass. 601. *Brodbine* v. *Revere*, 182 Mass. 598. *Commonwealth* v. *Sisson*, 189 Mass. 247. *Commonwealth* v. *Hyde*, 230 Mass. 6, 8. *Commonwealth* v. *Slocum*, 230 Mass. 180, 190. *Bradley* v. *Zoning Adjustment Board of Boston*, 255 Mass. 160, 171. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 349. *Sproles* v. *Binford*, 286 U. S. 374, 377.

3. The rules and regulations now in force and here assailed were adopted by the department of public works to be in effect on and after January 24, 1924. The substance of those rules and regulations is as follows: Provision is made by § 1 requiring all those engaged in outdoor advertising to be licensed by the department of public works, such licenses to be in force for one year unless sooner revoked. The fee for such license and for renewal thereof is $50. By § 2 no one may engage in the business of outdoor advertising without permits for each advertising device, for which two annual fees of $2 each are exacted, one for examination and the other for inspection, subject to various regulations as to details, and to revocation for cause. By § 3 provision is made for advertising devices within public view from any highway, public park or reservation by persons not engaged in the business of outdoor advertising; therefore the plaintiffs are not affected by it and its terms need not be considered. In general, outdoor advertising within any public way is forbidden by § 4A. By § 4B "No permits will be issued for outdoor advertising in any location which is within three hundred (300) feet of any public park or reservation, if within view of any portion of the same" with an exception not here material, and permits may be granted for the location of electrical display signs on buildings under such restrictions as the department of public works may impose. By § 4C "No outdoor advertising shall be painted or affixed upon any fence or pole within fifty (50) feet of any public way nor directly on the wall of any building." By the provisions of § 5 dimensions and material of all outdoor advertising devices may be pre-

scribed by the department of public works, and objectionable matter may be required to be removed. No renewal permit will be granted for advertising devices unless the front, back, braces, anchors and lattice work thereof are painted and kept in proper condition. Advertising devices and the ground about them must be kept free from all rubbish or any materials objectionable in the opinion of the department of public works. Section 6 is entitled "Restrictions" and is in these words: "A. No permit will be granted for the location or maintenance of billboards, signs or other advertising devices near certain public ways where, in the opinion of the Division, having regard to the health and safety of the public, the danger of fire, and the unusual scenic beauty of the territory, signs would be particularly harmful to the public welfare. B. No Permit will be granted for the location, erection or maintenance of any billboard, sign or other advertising device within a radius of one hundred and fifty (150) feet from the point where the center lines of two or more public ways intersect. This provision shall not apply to districts which the Division may determine are of a business character. C. No billboard, sign or other advertising device shall be erected, displayed or maintained in any block in which one-half of the buildings on both sides of the street are used exclusively for residential purposes, except that if the written consent of the owners of a majority of the frontage on both sides of the street in such block is obtained and is attached to the application for a Permit to erect, display or maintain such billboard, sign or other advertising device the Division may permit the erection, display or maintenance of the same. D. No Permit will be granted for the erection or maintenance of any billboard, sign or other advertising device if said billboard, sign or other advertising device is to be located: — (1) Nearer than fifty (50) feet to the boundary line of any public way; (2) Nearer than one hundred (100) feet to the boundary line of any public way, if within view of any portion of the same, if said billboard, sign or other advertising device exceeds an area of thirty-two (32) square feet; (3) Nearer than three hundred (300) feet to the

boundary line of any public way, if within view of any portion of the same, if said billboard, sign or other advertising device exceeds a length of twenty-five (25) feet or a height of twelve (12) feet; (4) In any event if said billboard, sign or other advertising device exceeds a length of fifty (50) feet or a height of twelve (12) feet; except that the Division may permit the erection of billboards, signs or other advertising devices which do not exceed forty (40) feet in length and fifteen (15) feet in height if not nearer than three hundred (300) feet to the boundary line of any public way. Provided, however, that this paragraph shall not apply to districts which the Division may determine are of a business character. E. No permit shall be granted for the erection of a billboard, sign or other advertising device which will, in the judgment of the Division, obstruct the visibility of another sign. F. No billboards, signs or other advertising devices shall be located nearer to other billboards, signs or other advertising devices than fifty (50) feet, unless said billboards, signs or other advertising devices are placed back to back. Provided, however, that this provision shall not apply to districts which the Division may determine are of a business character."

By § 7 all advertising devices whether erected before the adoption of the rules and regulations or not must be removed on or before July 1, 1925, provided that extension may be granted to not later than July 1, 1927, unless maintained under permit issued pursuant thereto.

A form of ordinance or by-law is set forth in § 8 which if adopted by a city or town would be approved by the department of public works.

The Concord by-law presents the essential questions at issue in somewhat simpler form than do the rules and regulations of the department of public works. It was adopted by a majority vote at a town meeting. It contains no provision respecting licenses and permits and leaves their enforcement to the courts. It omits discretionary restrictions and the painted wall rule, and makes no distinction between districts of a business character and other parts of the town. It makes substantially the same fixed restrictions as do the

rules and regulations of the department. It is applicable indifferently to all parts of the town. Fines are prescribed for the violation of any provision of the by-law.

4. The rules and regulations were adopted by the department in conformity to the requirements of G. L. (Ter. Ed.) c. 93, § 29, and after the necessary hearings. The circumstance that the rules and regulations finally promulgated differed from those previously issued and from the suggested revision which formed the starting point of the hearings does not affect the validity of those ultimately formulated. It was the duty of the commissioners charged with that important duty to use all the information within their reach, and to profit by all the knowledge gained from the hearings, and to make the last draft as wise and perfect as they could. The statute did not render necessary a further hearing on their matured draft. No question is made as to the manner of the adoption of the by-law by the town of Concord.

5. The cases were consolidated into a single cause for hearing and were referred to a master under a rule "to hear the parties and their evidence, and to report his findings . . . together with such facts and questions of law and portions of the testimony as any party may in writing request." The master heard the parties and their evidence on one hundred fourteen days and took a view of signs, billboards and advertising devices in different sections of the Commonwealth, travelling approximately a thousand miles with counsel for that purpose. The record consists of five large printed volumes. The master filed a comprehensive report and reported a great amount of evidence, comprising many hundreds of printed pages. The plaintiffs filed seventy-eight numbered objections, embracing many subdivisions and covering one hundred four printed pages of the record. After receipt of the copy of draft of the master's report, the plaintiffs filed a large number of requests for report of facts, questions of law and portions of testimony, covering about twenty-two pages of the record. They then filed a motion, covering five printed pages of the record, that the report be recommitted to the

master. It contained many divisions, referred to divers of their objections, and requested a report of evidence concerning numerous findings, and of rulings. The motion was accompanied by a considerable number of requests for rulings of law. Decree was entered that this motion to recommit be "granted as a matter of discretion without ruling upon any question of law." The decree contained no specifications nor details of direction to the master. Pursuant to this decree further hearings were held by the master and a supplemental report was filed covering sixty-eight pages of the record, to which are annexed an index of so called test cases and several exhibits. The plaintiffs filed objections filling approximately two hundred forty pages of the record. They filed a second motion to recommit the case to the master, together with many requests for rulings. From an interlocutory decree denying this motion as matter of discretion without any rulings of law, the plaintiffs appealed. Motions by the defendants to confirm the master's reports and to enter final decrees have not been acted upon. The case has been reserved for determination by the full court.

6. The constitutional right asserted by the plaintiffs is in the main to conduct their business of outdoor advertising as they have been accustomed without interference by the enforcement of rules and regulations adopted by the defendants. It is of primary importance to ascertain the nature of that asserted right. That business has peculiar features. One is that it depends entirely for its success upon the occupation of places along the sides of highways and near parks and similar public places. The rules, regulations and statutes are not applicable to signs or advertising devices indicating solely the person occupying, the business transacted on, or the sale or letting of, the premises. They relate alone to advertising carried on as a business. The master made this finding: "Billboards are designed to compel attention. The advertising matter displayed upon them in words, pictures or devices, is conspicuous, obtrusive and ostentatious, being designed to intrude forcefully and persistently upon the observation and attention

of all who come within the range of clear normal vision. The only real value of a sign or billboard lies in its proximity to the public thoroughfare within public view. The advertising signs or billboards of the complainants, and others, are always located within public view, and almost invariably along, or adjacent to, boulevards, main avenues, roads and streets, in populated areas, where traffic of all kinds is heaviest. They are also located along the highway in rural or open sections, and along the lines of railroads. In a very few instances, certain of the complainants own the fee in the premises where their signs or billboards are erected. For the most part, however, the complainants erect their signs or billboards on premises under a lease or license for definite terms." That finding is abundantly supported by reported evidence. In essentials, it is almost, if not entirely, a matter of common knowledge. The object of outdoor advertising in the nature of things is to proclaim to those who travel on highways and who resort to public reservations that which is on the advertising device, and to constrain such persons to see and comprehend the advertisement. It does not appeal alone to the desire or consent of such persons; it is forcibly thrust upon the attention of all such persons, whether willing or averse. For such persons who strongly wish to avoid advertising intrusion, there is no escape; they cannot enjoy their natural and ordinary rights to proceed unmolested. Such advertising has certain features attached to "hawking" goods as defined in *Commonwealth* v. *Ober*, 12 Cush. 493, 495, a business long subject to regulation. As was said in *Packer Corp.* v. *Utah*, 285 U. S. 105, 110, quoting with approval from the opinion of the State court: "Billboards . . . placards and such are in a class by themselves. They are wholly intrastate, and the restrictions apply without discrimination to all in the same class. Advertisements of. this sort are constantly before the eyes of observers on the streets . . . to be seen without the exercise of choice or volition on their part. Other forms of advertising are ordinarily seen as a matter of choice on the part of the observer. The young people as well as the adults have the

message of the billboard thrust upon them by all the arts and devices that skill can produce. In the case of newspapers and magazines, there must be some seeking by the one who is to see and read the advertisement. The radio can be turned off, but not so the billboard . . . . These distinctions clearly place this kind of advertisement in a position to be classified so that regulations or prohibitions may be imposed upon all within the class." In this respect the plaintiffs are not exercising a natural right, *Gleason* v. *McKay*, 134 Mass. 419, 425; they are seizing for private benefit an opportunity created for a quite different purpose by the expenditure of public money in the construction of public ways and the acquisition and improvement of public parks and reservations. The right asserted is not to own and use land or property, to live, to work, or to trade. While it may comprehend some of these fundamental liberties, its main feature is the superadded claim to use private land as a vantage ground from which to obtrude upon all the public travelling upon highways, whether indifferent, reluctant, hostile or interested, an unescapable propaganda concerning private business with the ultimate design of promoting patronage of those advertising. Without this superadded claim, the other rights would have no utility in this connection. It is illusory to suggest that a traveller upon the highway may close his eyes and mind to the advertising matter thus displayed. That is practically impossible to the ordinary person. One cannot well travel upon the highway with any enjoyment or with safety to himself or others with his eyes shut.

7. That being in general the nature of the constitutional right asserted by the plaintiffs, the particular facts as found by the master may be summarized.

The business of outdoor advertising is today a nationwide industry employing a large amount of capital and supporting a large number of employees, and is utilized by manufacturers and merchants as a valuable means — by signs, electric displays and posters — of directing attention to the goods, wares, and merchandise which they are offering for sale and which may be or may become the subject

matter of interstate and foreign commerce. It is a recognized and established business and an important advertising medium, possessing advantages not found in any other. The most important of these advantages are dominant size, continued visibility, attention value through the employment of color, and the repetition capacity of the advertising message. The plants and equipment of the plaintiffs are not adapted for any other industry. Although the signs, billboards and devices as maintained by the plaintiffs fall into seven groups, viz., poster boards, painted bulletins or signs, wall boards, painted walls, spectacular signs, roof boards, and illuminated signs, the greater part of their outdoor advertising business is in the display of advertisements upon poster boards. These are thin walls or screens having a sheet iron surface over a wooden framework with supports set in the ground. Upon the smooth surface lithographed or printed sheets of paper are posted bearing a brief pictorial or other message. Painted bulletins or signs are similar but are constructed entirely of wood and the advertisement is painted directly upon the face of the structure. The estimated market value as of January 1, 1924, of the combined plants, including in that term all kinds of outdoor advertising devices, interests in land, structures, licenses and permits, equipment, offices and repair shops of the plaintiffs, was $5,000,000. Signs and billboards in large part are erected and maintained without regard to standards of size or safety in construction, location or maintenance. The master further found: "In some isolated cases, certain signs and billboards in this Commonwealth have been used as screens to commit nuisances, hide law breakers, and facilitate immoral practices. Around some few filth has been allowed to collect, and some have shut out light and air from dwelling places. In and around others, rubbish and combustible materials have been allowed to collect, which to some degree tend to create a fire hazard. Those instances were all so rare, compared with the total number of signs and billboards in existence, that I am unable to find upon the evidence that signs and billboards, in general, as erected and main-

tained in this Commonwealth, have screened nuisances, or created a danger to public health or morals, or facilitated immoral practices, or afforded a shelter for criminals, or created or increased the danger of fire, or hindered firemen in their work." No details or specifications for the construction of signs or billboards have ever been prescribed by the defendants. In practical operation under these rules and regulations the uniform standard of construction and the standard units of size adopted by the plaintiffs for their signs and billboards have been accepted and approved by the defendants. In a number of instances the signs and billboards erected or maintained by the plaintiffs since 1920 have in some respects been in disrepair and structurally weak or unsafe; but on the whole they have been well constructed and well and safely maintained under a regular system of inspection and maintenance. Other signs and billboards erected and maintained by persons other than the plaintiffs have been structurally unsafe and not well inspected or maintained by them. Some few signs and billboards erected by the plaintiffs and others have at times blown or fallen upon, across, or adjacent to the highway. "The commission believed that billboards and other advertising signs, as thus commonly placed within public view along the highway, were to a greater or less extent distracting, and were therefore traffic hazards. In the interest of public safety, the rules were accordingly designed to afford protection especially in districts of a nonbusiness character to all travellers upon the highway, whether vehicular or pedestrian, by requiring that signs, billboards and other advertising devices be limited in size, and that they be set back from the line of the highway a distance which would not be beyond the clear normal vision of travellers generally. I find that such restrictions tend to promote public safety." The master also found that such of the signs and billboards in the test cases as were located outside of business districts, at or near curves or at or near intersections of avenues of travel or underpasses, bridges, or railroad crossings, directly tend to obstruct the view ahead, to distract the attention of drivers

of motor vehicles and to increase the danger of travel upon the highway. "The commission in framing the rules and regulations took into consideration the fact that within this Commonwealth are many sections of historic interest and importance, also many abounding in fine natural scenery and landscape views, including highways, parks and reservations, the benefits and enjoyment of which have been made available for and accessible to the public by the expenditure of many millions of dollars of public moneys, either through the commission itself or by other public agencies; that these sections and locations naturally and constantly attract and interest many visitors from within and without the Commonwealth; that, as the commission believed, they had become a source of profit, as well as of pride, satisfaction and enjoyment to the citizens of the Commonwealth. The commission considered it important to preserve and maintain these places, in their popularity and naturalness, in the interest of public welfare. The commission also took into consideration the fact that throughout the cities and towns of the Commonwealth there had been manifest a determination to combine utility with beauty through comprehensive zoning laws, planning boards and other agencies, all having for their declared object the establishment and maintenance of areas which should be pleasant, agreeable, attractive and free from commercial intrusion. The commission considered that signs and billboards were inappropriate in regions, areas and communities where they disfigured, marred or injuriously affected the natural beauty of the landscape, or the pleasant or agreeable situation, prospect, view, or surroundings of places which are of interest chiefly by reason of their attractive or picturesque character, and in places which are frequented by the public chiefly on account of their beauty or historic interest, and in places where signs and billboards were likely to affect injuriously the enjoyment of the public. In framing regulations restricting signs and billboards in such sections, places and communities, it was the express intention and purpose of the commission to adapt them to these enumerated conditions and prevailing sentiments of

the people in favor of increasing restriction, and in so far as the law would allow, to prevent these intrusions." After the promulgation of the rules and regulations, the defendants made no designation of any section as a public park or reservation, nor of any public route, way, or territory as a place of scenic beauty, or where, having regard to the health and safety of the public or danger of fire, signs would be particularly harmful to the public welfare. Applications for permits were invariably denied along certain routes of travel through sections deemed to be of scenic beauty, such as the Mohawk Trail, the Berkshire Trail, the North Shore Boulevard, and some sections of the Newburyport Turnpike and of Cape Cod, although the proposed advertising devices otherwise complied with the rules and regulations. The master found that beauty in the sense intended and employed in the framing and administration of the rules and regulations has in fact a real and substantial economic value to the Commonwealth and to its citizens. The defendants have not undertaken to define a district of a business character. One purpose of the commission in adopting the rule to the effect that no outdoor advertising shall be painted or affixed on any rock, tree, fence or pole, or directly on the wall or roof of any building not constructed for the purpose, was to exercise full supervision over outdoor advertising, to avoid legal entanglements likely to arise if advertising matter became permanently attached to the real property of third persons, and to prevent the unsightliness and disfigurement of such advertising. The defendants in framing the rules and regulations took into consideration and were influenced by the many objections which had been made from time to time against outdoor advertising devices, the facts and circumstances appearing in the reported cases on that subject, especially in *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526, and the cases therein cited, and their own observation, study and experience; and they endeavored by placing special restrictions upon the size and location of signs and billboards to lessen the detrimental effect of such structures and their uses upon the public safety, health and general welfare.

The defendants in adopting and administering the rules and regulations and in making certain rulings and decisions, and also in acting upon applications for permits or renewals of permits, intended as a general policy to restrict signs, billboards and other advertising devices when within public view chiefly but not exclusively to districts of a business character for the purpose of promoting the public safety, health, morals and general welfare as they in their judgment and discretion might determine the circumstances required. They endeavored to recognize by strict construction, and without enlargement, the legal rights, as they understood them, of the plaintiffs and all others engaged in outdoor advertising. In practical operation, the rules and regulations have been always applied impartially to all members of a class, and no favoritism, discrimination or special privileges have ever been shown, granted or permitted. Despite some deficiencies and failings in the administration of the department, the defendants acted at all times in good faith, and according to their best judgment, intending always to obey the law. The outdoor advertising business of the several plaintiffs is intrastate and not interstate business or commerce. The rules and regulations adopted by the defendants do not conform to the standards of practice, service and location (except the standards of construction and the standard units of size) adopted by the plaintiffs and national advertisers, or to the demands of national advertisers.

The master was unable to find upon the evidence that the business of each of the plaintiffs is so interrelated and dependent upon national business, and the standards of practice required by national advertisers, that a departure from such standards, in order to comply with the rules and regulations, would result in the ruin of each of the plaintiffs or would so materially prevent the execution of contracts for outdoor advertising as to result in the practical prohibition of the business of each; or that each of the rules and regulations and all of them as a group are or have been, in practical operation, of destructive effect and unreasonable, or that they fail to establish a standard of

action or permit the defendants to exercise their untrammeled determination or caprice in enforcement. Further findings of the master are these: "In promulgating the new rules and regulations, the commission realized the fact that between seventy-five per cent and ninety per cent of all the outdoor advertising signs then existing in the Commonwealth, and not exempt by statute, would have to be removed or relocated, in order fully to comply with said rules and regulations. This number included approximately ninety-six per cent of the combined number of signs and billboards then maintained by the several complainants. Largely because of physical conditions, many of these latter signs and billboards could not be relocated on the same lot, nor could immediately adjacent locations always be obtained, nor the same strategic positions be duplicated in the immediate vicinity." "Before, and since the adoption of the rules and regulations . . . the complainants and others engaged under license in the business of outdoor advertising in this Commonwealth have erected and maintained, and still maintain under permit from the commission, signs, billboards and other advertising devices, conforming to their own standards of size and construction, which fully comply with the requirements of said rules and regulations. Of the fourteen hundred permits obtained by the complainants since January 24, 1924, nine hundred were renewal permits and five hundred were for new locations obtained by them since that date. All of these signs, billboards and advertising devices are now maintained under the new rules and regulations, in the prescribed sizes, and at the prescribed distances, and furnish and afford an effective and advantageous means of advertising. They are in active demand and use, and as located compel the attention and observation of all who come within the range of clear normal vision, even when distant three hundred feet from the line of the highway. I find that under all the circumstances a readjustment of their signs, billboards and locations of the same could be reasonably made by all permittees to meet the requirements of the new rules and regulations . . . and for that purpose provision was made

in the rules and regulations for an extension of time to make such readjustment."

The master also found that signs and billboards when erected or maintained in districts of an indisputably business character have no depreciating effect upon property values. In a neighborhood of homes, such commercial intrusions are offensive to the sight and obnoxious to ordinary, reasonable persons who may own or occupy those homes. Because of the serious aversion to such signs and billboards, they substantially and materially annoy and disturb the occupants and interfere with the comfortable enjoyment of their homes. The introduction of signs and billboards into such a neighborhood tends seriously to injure and depreciate the value of the property. In urban districts of a mixed character, which are neither distinctively business nor distinctively residential, the effect of signs and billboards is rarely, if ever, seriously objectionable to the occupants of houses, or appreciably detrimental to property values; in rural communities, when signs or billboards are located in proximity to homes not occupied by persons deriving revenue from such signs, the master was unable to find upon the evidence that they are less obnoxious than in a community of homes elsewhere. The master found that § 4B, prohibiting billboards, signs and advertising devices within three hundred feet of any public park or reservation, if within view of any portion of the same, was adopted with the purpose, so far as practicable, of keeping the situation and surroundings of public parks and reservations, including playgrounds, in harmony with the purposes for which such places were constructed and maintained, and to preserve or enhance their attractiveness, picturesque character and beauty, in the interest of public welfare. For the same reasons § 6A was adopted, making the factor of "scenic beauty" in other locations an element in determining when a permit should be refused, the commission being of the opinion that beauty in that sense had great economic value to the Commonwealth and to its citizens. In administering § 4B, the commission made no distinction as to the size, location or character of the section or lot denominated

a park or reservation, nor did it always definitely ascertain and determine, when denying permits for locations within the prescribed area, whether or not a given lot or section was strictly a public park or reservation in a legal sense; but in practical operation this rule was applied in the case of every application for a permit upon a location which was within three hundred feet, and within public view, of any parcel of land which was set apart and open to free public use, and was in fact used as a place of rest, recreation or enjoyment by the public. In this connection the master stated: "I . . . find that billboards, signs and advertising devices when located at or near public parks and reservations tend to detract from the surroundings and enjoyment of such places, and thereby, in some measure, to affect the public health and public welfare, through lessening, by their presence and persistent intrusion upon observers, the beneficial influence of mental and physical rest, relaxation and enjoyment which are intended to be, and are afforded by such places. I find that billboards, signs and advertising devices when erected in sections or locations chiefly of historic interest or possessing natural beauty of landscape, pleasant or agreeable situation, prospect, view and attractive or picturesque surroundings or character, are inharmonious with and disfigure the same, and affect injuriously the benefits to be derived therefrom, and the enjoyment of the public therein, as also the economic value thereof to the Commonwealth and its citizens."

Other findings in the extended report of the master need not be recited nor succinctly stated. They have all been considered in deciding the cases.

8. The master states in his original and supplemental reports that his findings are based on all the evidence. Confessedly, all the evidence is not reported in full notwithstanding the voluminous record. Very much of the testimony is not printed. The testimony of divers witnesses reported at the request of the plaintiffs is not complete but is stated only in part. As already pointed out, the original rule to the master required him to report "his findings to this court, together with such facts and ques-

tions of law and portions of the testimony as any party may in writing request." This form of reference was designed to relieve the court of the duty of reviewing all the testimony in order to test the accuracy of the findings of the master, and to conform to the underlying reason for the appointment of a master, which is in the main to make the facts found final save as put in issue by exceptions specific as to defined matters. *Dean* v. *Emerson,* 102 Mass. 480, 482. *Warfield* v. *Adams,* 215 Mass. 506, 519–520. *Smith* v. *Lloyd,* 224 Mass. 173, 174. The master has nowhere stated that all the material evidence is reported, but by granting certain requests for rulings has asserted the contrary. What was seen by the master upon his extended views was in a sense evidence, was before his mind, and might be considered and given weight by him in making his report. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 29–30. *Commonwealth* v. *Handren,* 261 Mass. 294, 297. *Snyder* v. *Massachusetts,* 291 U. S. 97, 121–122. Findings of a master based in part upon a view will not be reversed when the evidence is not reported in full. *Nelson* v. *Belmont,* 274 Mass. 35, 39–40. *Stewart* v. *Hanreddy,* 212 Mass. 340, 343. *Langevin* v. *Fletcher,* 273 Mass. 543. The plaintiffs, after having requested the master to report certain portions of the testimony, as was within their right under the reference, further requested him to report "any other testimony — if such there be — upon which he bases the following findings," accompanied by seventy-six or more specifications. This request was renewed after the hearing upon the decree of recommittal. The refusal to comply with this request does not imply that there was no such other evidence. This request was rightly denied on several grounds. The plaintiffs had no right to shift upon the master the burden of sifting out and reporting all such evidence. *Taber* v. *Breck,* 192 Mass. 355, 360. *Tuttle* v. *Corey,* 245 Mass. 196, 203–204. They had a right to the report of all testimony specified by them. They were not entitled to more. The procedure adopted by them was an attempt to "put on trial the master" instead of the issues

in the case. *Warfield* v. *Adams*, 215 Mass. 506, 520. The brief decree merely granting the first motion to recommit the report, without making any ruling of law, although general in terms, cannot rightly be construed as a direction to comply with every one of the many matters referred to therein. Such construction will not be adopted in the circumstances here disclosed in the absence of an interlocutory decree specifying the scope of the recommittal in some detail. If any such purpose had been intended, it would have been much simpler and more natural to order all the evidence reported rather than to impose such an onerous and unusual burden upon a master.

9. The settled rule with respect to the report of a master without a full report of the evidence is that his findings of fact based upon oral testimony are accepted as true unless mutually inconsistent and plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Prudential Trust Co.* v. *McCarter*, 271 Mass. 132, 139. The plaintiffs' contention that this rule is not applicable cannot be supported for the several reasons stated. The findings will all be considered in the light of such portions of the testimony as are reported and such exceptions as were taken, but in the main they must be accepted as true.

These cases proceeded upon the assumption that the plaintiffs had put in issue each rule and regulation separately; that is, that they questioned them disjunctively as well as conjunctively, so that both the plaintiffs and others engaged in the outdoor advertising business in this Commonwealth, as well as the department of public works, might be advised by the court with respect to the constitutionality and validity of each rule. Hitherto, each plaintiff or plant owner has determined the number and kind of signs or billboards he will erect and maintain in the territory in which he carries on his business, and (with certain exceptions of no significance in this connection) the particular location, placement and size of each, the particular board or boards upon which he will display the advertisements of each customer, having regard for the type and

character of the advertisement, and also the district or districts in which it is to be displayed and the period to be covered by the display.

10. It is manifest that the rules and regulations by their terms and as administered operate as a severe limitation upon the business of the plaintiffs as heretofore conducted. These rules and regulations were promulgated in the exercise of the police power. This court has never undertaken to define that power. It may be put forth in aid of the public health, the public safety, the public morals and the public welfare. It covers a vast field. *Commonwealth* v. *Libbey*, 216 Mass. 356. *Holcombe* v. *Creamer*, 231 Mass. 99. *Nebbia* v. *New York*, 291 U. S. 502, 526–530. As already pointed out, art. 50 by constitutional mandate establishes "Advertising . . . on private property within public view" as a proper subject for the exercise of the police power by regulation and restriction, which may extend to prohibition of such advertising in certain places, areas, divisions, localities and districts, though not utterly and without bound, throughout the Commonwealth. The regulations and restrictions must have some reasonable basis and be designed to accomplish a permissible end, in order to be valid.

One basis, according to the finding of the master already cited, is that the safety of travel upon highways is promoted by the several provisions of the rules and regulations, especially those as to setback of advertising devices from highways and other points. The danger arising from the operation of automobiles upon public ways is very great. The toll of life and suffering of human beings exacted by this cause is appalling. It is a subject of common comment and is too well known to need discussion. It is one of the stains upon our civilization. The movement of motor vehicles easily becomes a source of injury to others upon highways. It has produced considerable legislation and judicial opinion. See *Opinion of the Justices*, 251 Mass. 569, 595. Notwithstanding all the care taken that incompetent persons be not licensed to operate motor vehicles, it is manifest that inattention of such licensees because of

distraction for one reason or another is a fruitful source of injury to persons and property. The department of public works, of which the defendants are in control, is in general responsible for the registration of motor vehicles and the licensing of operators. That department has a heavy duty as to the safety of travel upon highways. Advertising devices on private land manifestly are designed to attract the attention of motorists. The opinion of the executive head of that department that billboards have a distractive effect upon the drivers of automobiles and that they constitute traffic hazards except in business sections is entitled to weight. There was other testimony to this effect. The finding of the master is that in congested districts billboards do not tend directly to affect the safety of travellers except when presenting some unusual features or placed in some special location; in sparsely settled or open sections the element of distraction depends upon the degree of allurement of each billboard; when located at or near curves or near intersections of routes of travel, or underpasses, or bridges, they tend to divert the attention of travellers. Signs and billboards in such locations have been erected and maintained by the plaintiffs and contribute to increase the perils of travellers upon public ways. The finding of the master that the rules and regulations tend to prevent such distraction of the attention of drivers of automobiles and to promote public safety upon highways is warranted and must be accepted as true even though no direct testimony was introduced that particular accidents were due to inattention of drivers of automobiles caused by the distracting influence of pictures, embellishments and words on signs or billboards. The view taken by the master may have been convincing on this point. Apart from that, it is almost if not quite a matter of common knowledge that such distraction from that cause with accompanying jeopardy to travellers is liable to occur. Rules and regulations of advertising devices, even to the extent of prohibition, having a reasonable tendency to prevent obstructions to traffic or to facilitate safety of travel, are permissible. *Commonwealth* v. *Plaisted,* 148 Mass. 375. *Commonwealth*

*v. Ellis*, 158 Mass. 555. *Commonwealth* v. *Fox*, 218 Mass. 498. *Commonwealth* v. *Surridge*, 265 Mass. 425. *Opinion of the Justices*, 251 Mass. 569, 595–600. Commercial vehicles may be excluded from a parkway. *Brodbine* v. *Revere*, 182 Mass. 598. Automobiles may be forbidden to use certain ways; *Commonwealth* v. *Kingsbury*, 199 Mass. 542, *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 348, and cases cited; or required to travel but one way on a street, *Widronak* v. *Lord*, 269 Mass. 238. Danger to travel on highways arising from diverting the attention of the motorist from the road by billboards was recognized in *Perlmutter* v. *Greene*, 259 N. Y. 327, 333–334, where it was held to be within the power of the public officer in charge of highways to erect within the way a screen so as to block the view of a large sign erected on private land. That decision also suggests that the screen might be more sightly than the billboard and that the private owner has no right to have his property viewed by the traveller. It would seem that the practical administration of affairs would be better subserved by statutory regulation and restriction as to the erection of billboards than by such wasteful expenditure of public and private money as was illustrated in the *Perlmutter* case.

Another basis for the rules and regulations is that they tend to protect people travelling upon highways from the intrusion of the public announcements thrust before their eyes by signs and billboards. The people of the Commonwealth by the adoption of art. 50 and the General Court by the enactment of G. L. (Ter. Ed.) c. 93, §§ 29–33, have declared that such signs and billboards on private property within public view may be regulated and restricted. One permissible and reasonable ground for such regulation is that travellers may be free from annoyance. This is not a mere matter of banishing that which in appearance may be disagreeable to some. It is protection against intrusion by foisting the words and emblems of signs and billboards upon the mass of the public against their desire. The General Court has extensive control over highways. It often has legislated with respect to their use and the use

of other public places. *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269. *Commonwealth* v. *Davis*, 162 Mass. 510, affirmed in *Davis* v. *Massachusetts*, 167 U. S. 43. In view of art. 50 and the governing statutes enacted pursuant to its provisions, the projection from private land upon travellers on highways of the advertising words and symbols of billboards may be regulated, restricted and in appropriate places prohibited. There are analogies tending to support this view apart from art. 50 and the statute. A talking machine on private land used for advertising may be enjoined as a nuisance by a shopkeeper across the street. *Stodder* v. *Rosen Talking Machine Co.* 241 Mass. 245. Nuisances at common law frequently arise from offensive sights, sounds or smells. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, 489–490. Light at unseasonable times may be a nuisance. *Nugent* v. *Melville Shoe Corp.* 280 Mass. 469. *Shelburne, Inc.* v. *Crossan Corp.* 95 N. J. Eq. 188. Within reasonable limits, that which may be a nuisance at common law may be made legal by legislative act. The ringing of a factory bell, although previously enjoined as a nuisance, may be authorized by statute. *Sawyer* v. *Davis*, 136 Mass. 239. There are numerous similar decisions. *Whitcomb* v. *Vigeant*, 240 Mass. 359, and cases cited. There are many illustrations of the converse, where business not a nuisance may be regulated or prohibited in specified places for the general welfare. In *Commonwealth* v. *Bearse*, 132 Mass. 542, a statute prohibiting a person from maintaining a building for refreshments within one mile of a camp meeting without permission from the officers having charge of the meeting was held valid. Other illustrations may be found in *Newton* v. *Joyce*, 166 Mass. 83, as to stables for horses, in *Commonwealth* v. *Hubley*, 172 Mass. 58, as to storing rags, in *Storer* v. *Downey*, 215 Mass. 273, as to garages, and in *Fischer* v. *St. Louis*, 194 U. S. 361, as to stables for cows. Comprehensive zoning laws are valid. *Opinion of the Justices*, 234 Mass. 597. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. The right to own land and to use it according to the owner's conception of profit in the main is a part of the liberty secured to the

individual under the Constitution; but that right is subject to legislative regulation in the public interest. *Brett* v. *Building Commissioner of Brookline,* 250 Mass. 73, 77. The common law right of the landowner to build a fence more than six feet high may be in effect prohibited. *Rideout* v. *Knox,* 148 Mass. 368. The right of a landowner to take sand and gravel from his beach, or to erect wharves beyond a certain line, may be prohibited without compensation for the protection of harbors and in the interests of navigation. *Commonwealth* v. *Tewksbury,* 11 Met. 55. *Commonwealth* v. *Alger,* 7 Cush. 53. *Boston* v. *Lecraw,* 17 How. 426, 433. Increasing the depth of water over flats so as to cover them permanently and prevent their practical use by the landowner is not a taking. *Crocker* v. *Champlin,* 202 Mass. 437. *Burke* v. *Commonwealth,* 283 Mass. 63, 69–70. There are many instances where invasion of air space over land, when authorized by legislation and not amounting to condemnation of property, although depreciating its market value, must be suffered by the landowner without compensation or remedy. *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, 523–526, where numerous cases are reviewed. The right of the traveller upon the highways to a peaceful and unannoyed journey, so far as concerns advertising on private land, is recognized by art. 50. To adjust the conflicting interests of the public and of the individual is a proper legislative function.

11. The plaintiffs urge that the rules and regulations, so far as they relate to the preservation of scenic beauty and the exercise of taste and fitness in the location of billboards, are void because they rest upon "aesthetic considerations." It was said in *Opinion of the Justices,* 234 Mass. 597, 604: "It has been decided quite generally, if not universally, by courts in which the question has been raised, that aesthetic considerations alone or as the main end do not afford sufficient foundation for imposing limitations upon the use of property under the police power." While property owners cannot be compelled in general to give up their rights "for purely aesthetic objects," yet if "the primary and substantive purpose of the legislation is

such as justifies the act, considerations of taste and beauty may enter in, as auxiliary." *Welch* v. *Swasey*, 193 Mass. 364, 375. *St. Louis Poster Advertising Co.* v. *St. Louis*, 249 U. S. 269. The phrase "aesthetic considerations" in our opinion has commonly been applied to regulations as to the character, form and appearance of constructions to be erected. The rules and regulations here in question have different aims. They do not rest primarily upon aesthetic considerations in the sense in which that phrase has been used to overturn legislative enactments. They are designed to promote safety of travel upon the highways, and enjoyment of resort to public parks and reservations, to shield travellers upon highways from the unwelcome obtrusion of business appeals, to protect property from depreciation, and to make the Commonwealth attractive to visitors from other States and countries as well as to her own citizens. The rules and regulations are so phrased as to permit the exclusion of billboards and other advertising devices from territory whose scenic beauty would be especially harmed by their presence. The rules and regulations have been administered by the defendants so as to protect the scenic beauty of the Commonwealth. In view of the history already narrated leading to the proposal and adoption of art. 50, protection of scenic beauty from the intrusion of advertising on private property within public view is within its design and scope. Grandeur and beauty of scenery contribute highly important factors to the public welfare of a State. To preserve such landscape from defacement promotes the public welfare and is a public purpose. It has been held permissible at public expense to provide band concerts, *Hubbard* v. *Taunton*, 140 Mass. 467, and to erect monuments, statues, gates, archways and memorial halls, and to engage in public celebrations, *Kingman* v. *Brockton*, 153 Mass. 255. It was said in *Attorney General* v. *Williams*, 174 Mass. 476, 479–480, that public parks, although only recently thought to be a public purpose, now "are expected to minister, not only to the grosser senses, but also to the love of the beautiful in nature in the varied forms which the changing

seasons bring. Their value is enhanced by such touches of art as help to produce pleasing and satisfactory effects on the emotional and spiritual side of our nature. Their influence should be uplifting and, in the highest sense, educational. If wisely planned and properly cared for they promote the mental as well as the physical health of the people. For this reason it has always been deemed proper to expend money in the care and adornment of them to make them beautiful and enjoyable. Their aesthetic effect never has been thought unworthy of careful consideration by those best qualified to appreciate it." Private property may be taken by eminent domain for public parks and to lay out ways for the sole purpose of providing access to places affording beautiful views where there can be no business travel. "A road need not be for a purpose of business to create a public exigency; . . . pleasure travel may be accommodated as well as business travel; and" land may be seized under eminent domain for highways "to places of pleasing natural scenery." *Rindge Co.* v. *Los Angeles*, 262 U. S. 700, 708. *Higginson* v. *Nahant*, 11 Allen, 530, 535–536. In so far as the granting or denial of permits for the location of billboards in the cases at bar has been governed by considerations of taste and fitness, the purpose has been to preserve places of natural scenic beauty and historical interest from incongruous intrusion. It is in substance exclusion of billboards and advertising devices by zoning. It is an attempt to segregate them to a certain extent in places where from the scenic or historic point of view the dominant use of land is indifferent or is the transaction of business, and to shut them out from regions where nature has afforded landscape of unusual attractiveness and where historic and other factors have created places hallowed by patriotic, literary and humanitarian associations. In view of the essential qualities of the plaintiffs' business as earlier described in this opinion, we think an administration of the rules and regulations to the end that the scenic beauty of the Commonwealth may be protected and preserved violates no constitutional right

of the plaintiffs. It is, in our opinion, within the reasonable scope of the police power to preserve from destruction the scenic beauties bestowed on the Commonwealth by nature in conjunction with the promotion of safety of travel on the public ways and the protection of travellers from the intrusion of unwelcome advertising. That conclusion seems to us to be supported by *Nebbia* v. *New York,* 291 U. S. 502, 525–528, and the many cases there cited and summarized. It would be vain for us to go over the ground there so completely covered. It is supported in principle by other decisions. *Gorieb* v. *Fox,* 274 U. S. 603. *Packer Corp.* v. *Utah,* 285 U. S. 105, 112. *General Outdoor Advertising Co.* v. *Indianapolis,* 202 Ind. 85. *People* v. *Sterling,* 128 Misc. (N. Y.) 650; affirmed in 222 App. Div. (N. Y.) 849. *State* v. *New Orleans,* 154 La. 271, 283–284. *State* v. *Kievman,* 116 Conn. 458, 465–466. *Kansas City Gunning Advertising Co.* v. *Kansas City,* 240 Mo. 659. *Ware* v. *Wichita,* 113 Kans. 153, 157. *Horton* v. *Old Colony Bill Posting Co.* 36 R. I. 507. *Walnut & Quince Street Corp.* v. *Mills,* 303 Penn. St. 25. See also *Cream City Bill Posting Co.* v. *Milwaukee,* 158 Wis. 86.

Even if the rules and regulations of billboards and other advertising devices did not rest upon the safety of public travel and the promotion of the comfort of travellers by exclusion of undesired intrusion, we think that the preservation of scenic beauty and places of historical interest would be a sufficient support for them. Considerations of taste and fitness may be a proper basis for action in granting and in denying permits for locations for advertising devices. The Debates of the Constitutional Convention of 1917–1918, vol. III, pages 621–672, to which reference has already been made, show a current of discussion in favor of the adoption of art. 50 as a means for the protection of beautiful landscapes and places of historic interest from the intrusion of billboards and other advertising devices. Those debates afford proof that one purpose of art. 50 would fail if the regulations for the exclusion of advertising devices from such places cannot be upheld. The

normal interpretation and natural meaning of the words of art. 50 are broad enough to embrace that subject. Of course that article binds the judiciary of this Commonwealth. Our only inquiry is whether it offends the Constitution of the United States. It was said respecting the expansion of views as to the valid exercise of the police power in *Hadacheck* v. *Los Angeles*, 239 U. S. 394, 410: "There must be progress, and if in its march private interests are in the way they must yield to the good of the community." In *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, at page 387, occurs this statement of principle: "Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise." These authoritative pronouncements justify, in our opinion, the extension of the police power to the prohibition of billboards and advertising devices in places where they deface natural scenery and places of historic interest. *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526. *St. Louis Poster Advertising Co.* v. *St. Louis*, 249 U. S. 269. *Opinion of the Justices*, 234 Mass. 597, 604–611, and cases there reviewed. The plaintiffs have cited many cases to the effect that restrictions on the erection and maintenance of billboards are invalid. *Haskell* v. *Howard*, 269 Ill. 550. *State* v. *Whitlock*, 149 N. C. 542. *Curran Bill Posting & Distributing Co.* v. *Denver*, 47 Colo. 221. *Haller Sign Works* v. *Physical Culture Training School*, 249 Ill. 436. *Passaic* v. *Paterson Bill Posting, Advertising*

& *Sign Painting Co.* 43 Vroom, 285. We are constrained not to follow them as controlling in the cases at bar.

12. The plaintiffs have made an elaborate argument to support the proposition that the rules and regulations prohibit rather than regulate their business. It is plain that the rules and regulations are not prohibitory in form. The requirements for licenses and permits are permissible as a means of regulation. The fees are reasonable in amount. *Commonwealth* v. *Slocum,* 230 Mass. 180, 192. *Lever Brothers Co.* v. *Commonwealth,* 232 Mass. 22, 26–27. *State Board of Tax Commissioners* v. *Jackson,* 283 U. S. 527, 537–541. The requirements as to distance of setback of billboards from the boundary lines of ways, varying as to size and location from fifty to three hundred feet, and from any public park or reservation three hundred feet if within view from same, cannot be pronounced excessive. These regulations, in connection with those as to maximum size of the boards, deal systematically with the problem of outdoor advertising. They are designed especially in nonbusiness districts to make billboards and signs subservient to the safe and convenient utilization of public ways for travel. The findings of the master already recited show the tendency of these regulations to promote safety and pleasure in public travel, while at the same time allowing those who so desire to see and read what may be upon the billboards and signs located in places appropriate for them. In large sections of the Commonwealth the setback rule of three hundred feet tends to reduce interference with pleasing landscapes, and to diminish the forcible obtrusion of advertising upon the attention of travellers. Some setback from the boundary lines of ways is warranted in order to prevent the danger of billboards falling or being blown upon the public way. The extent of setback needed to minimize traffic hazards depends largely upon practical experience and sound judgment. The protection of those who resort to public parks and reservations for rest and recreation from the intrusion of the billboard within three hundred feet of them is permissible. As already pointed out, one main purpose of art. 50 was to extinguish the effect of the

decision to the contrary in *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348. To hold this regulation invalid would be trifling with art. 50.

The requirement of written consent from the owners of a majority of the frontage on both sides of the street in certain residential districts as a prerequisite to granting a permit for the erection of an advertising device is reasonable. It falls within the authority of *Inspector of Buildings of Lowell* v. *Stoklosa,* 250 Mass. 52, 62–63. *Thomas Cusack Co.* v. *Chicago,* 242 U. S. 526, 531.

The regulations are not prohibitory in substance and effect. There is ample opportunity for the exercise of outdoor advertising in business sections throughout the Commonwealth. Restrictions upon the previous activities of the plaintiffs in considerable part relate to setbacks of billboards from highway boundaries and to localities where unusual scenic beauty would be marred by their presence. Nevertheless, there is much room for outdoor advertising outside of business districts. These restrictions, by express terms of the regulations, do not apply to districts of a business character. Therefore, the places where people most do congregate are open to advertising uses. Neither in form nor in operation are the regulations prohibitory. The main contention of the plaintiffs in this respect is that, owing to the methods of business heretofore employed by them and to the demands of their customers, it will now be impossible to conduct their business at a profit and they will be driven out of the advertising field. The finding of the master was against the plaintiffs on this point. Considerable evidence in support of this contention of the plaintiffs was offered and excluded, as we think, rightly. There was evidence to the effect that in certain localities there was not available sufficient space for alternative locations for outdoor advertising to satisfy the needs of the plaintiffs. It is not disputed by the defendants that the rules and regulations prohibit the conduct of the outdoor advertising business by signs and billboards located as most of them are now located and require it to be carried on by signs and billboards located on less conspicuous

sites. But there is no finding as to the possible number of locations conforming to the rules and regulations as compared with existing sites. That there is not space within the Commonwealth for advertising in accordance with the rules and regulations has not been found by the master and is not required by the evidence. Doubtless the initial expense to the plaintiffs of changing their signs and billboards to conform to the rules and regulations will be considerable. The right to exclude in any particular neighborhood or district all outdoor advertising when interfering with scenic beauty, or on grounds of taste or fitness, "necessarily includes the authority to determine under what circumstances such use may be availed of, as the greater power contains the lesser." *Davis* v. *Massachusetts*, 167 U. S. 43, 48. If, however, it be assumed in favor of the plaintiffs that their business on the lines heretofore conducted will not be profitable when conducted in conformity to the regulations, that does not, in all the conditions disclosed, entitle them to relief. The practical operation and effect of a statute, by-law, or ordinance are sometimes important factors in determining its constitutionality. *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 237. *Jay Burns Baking Co.* v. *Bryan*, 264 U. S. 504. The scope of that principle, however, is much narrowed when the subject matter is indubitably within legislative competency. The power to regulate outdoor advertising on private land within public view is established by art. 50. The circumstance that the practical effect of the regulations may render the business as heretofore conducted by the plaintiffs unprofitable does not brand the regulations as invalid. That is settled by the trading stamp cases. *Rast* v. *Van Deman & Lewis Co.* 240 U. S. 342, 368. *Tanner* v. *Little*, 240 U. S. 369, 386. It was held to be not decisive in *Armour & Co.* v. *North Dakota*, 240 U. S. 510, 515, with respect to sales of lard. There are many other similar decisions. *Fischer* v. *St. Louis*, 194 U. S. 361. *Morris* v. *Duby*, 274 U. S. 135, 144. *Nebbia* v. *New York*, 291 U. S. 502, 526–530, and cases cited. It was so decided in *St. Louis Poster Advertising Co.* v. *St. Louis*, 249 U. S. 269.

13. The statute reposes in the department of public works power to issue or to withhold permits in the honest exercise of a reasonable discretion, not to act arbitrarily or whimsically. It is to be presumed that public officers will discharge their duties honestly and in accordance with the rules of law. There is nothing in this record to require the conclusion that there was unfair discrimination or failure to exercise an honest judgment in the administration of the rules and regulations. Every presumption is in favor of legality and good faith until the contrary is shown. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50. *Ayer* v. *Commissioners on Height of Buildings in Boston,* 242 Mass. 30, 35. *Larkin* v. *County Commissioners,* 274 Mass. 437, 440. *New York* v. *Van de Carr,* 199 U. S. 552. *Mackay Telegraph & Cable Co.* v. *Little Rock,* 250 U. S. 94. *Douglas* v. *Noble,* 261 U. S. 165.

14. The rules and regulations are not invalid on the ground that the issuing and renewal of licenses depend upon the caprice of any individual or board. The master stated that he was unable to find that "in practical operation the rules and regulations do not lay down a standard of action." In its context this seems equivalent to a finding that such a standard was afforded. As a whole they carry the implication that licenses for advertising devices which conform to the stated restrictions, by applicants showing a disposition to comply with such restrictions and not otherwise infringing upon the public welfare, commonly will be granted and renewed. The principle laid down in *Commonwealth* v. *Maletsky,* 203 Mass. 241, and *Goldstein* v. *Conner,* 212 Mass. 57, is not violated. This point is covered by *Federal Radio Commission* v. *Nelson Brothers Bond & Mortgage Co.* 289 U. S. 266, 282, 284–285.

15. "The unusual scenic beauty of the territory," set forth in § 6 "Restrictions" A of the rules and regulations as basis for refusing permit for the location or maintenance of advertising devices, is sufficiently definite in description to fix a standard in advance for exacting obedience from an applicant. It avoids the objection of vagueness held fatal in *Adkins* v. *Children's Hospital,* 261 U. S. 525, 555, and in

*Cline* v. *Frink Dairy Co.* 274 U. S. 445, 463. In *United Billposting Co.* v. *Somerset County Council*, 95 L. J. K. B. 899, it was said by Lord Chief Justice Hewart respecting a by-law which forbade the exhibition of advertisements so as "to disfigure the natural beauty of the landscape": "Nothing is more clearly settled than that a by-law must contain adequate information regarding the duties of those who have to obey it. . . . The complaint against this by-law is that it does not say what is a landscape of natural beauty, and that it does not name the particular places or spots where advertisements must not be placed. . . . In my opinion the criticism fails. . . . The degree of certainty required must obviously be related to the subject-matter, and in my opinion this by-law dealing with a necessarily somewhat ambiguous matter cannot be said to be invalid on the ground of uncertainty. It is not to be assumed in the construction of this by-law that the work of the county council in preserving the natural amenities of the county will be conducted with caprice or in an unreasonable manner." The case on this point is governed by *Kneeland* v. *Emerton*, 280 Mass. 371, 383–389, and cases there reviewed, where the subject of vagueness in statutory regulations was discussed at large. *Commonwealth* v. *National City Co. of Boston*, 280 Mass. 439.

The words "business character" in § 6B, D and F of the rules and regulations as descriptive of a district fall within the same rule and are sufficiently definite. The provision that the determination of that matter shall be made by the department of public works does not repose power to act arbitrarily or to refuse to recognize what is in truth a district of business character. The decision of that matter must in the first instance be made by the department in passing upon applications. The words in their context mean districts which are in fact rightly described as having a "business character" and not alone such as the board may determine to be such. The power of initial decision in this particular may be vested in the department of public works, subject to review by the courts when necessary to prevent injustice.

16. The plaintiffs assail in numerous particulars the administration of the regulations by the defendants. The requirement that signs on roofs even in business sections shall not be of a size larger than that permitted for ground signs in business districts cannot be pronounced unreasonable. The defendants by circular announced as matter of administration that such size could not be larger than twelve by fifty feet, except that each application for an electrical display sign would be given individual consideration. The requirement appears to bear relation to the public safety. The words "any public park or reservation" in § 4B of the rules and regulations are sufficiently definite as fixing rights of parties. The words are comprehensive and generic. They include in this connection playgrounds. The rule forbidding the painting of advertising directly on the wall of a building or on a fence cannot be held to be arbitrary. Such signs could hardly be removed as a practicable matter, and might well be in effect beyond public control and be in contravention of art. 50.

The size, setbacks and spacing rules in nonbusiness districts are fairly adapted to carry out the dominating purpose of art. 50 and of the governing sections of the statute. The objections of the plaintiffs that there are not available spaces for their boards along highways after complying with the regulations as to size, setback and spacing rules do not show them to be unconstitutional. These considerations fall within the principles already stated.

17. The plaintiffs complain that their rights have been adversely affected by the refusal of the master to hear evidence offered to show the economic value of the outdoor advertising industry to the end that the court may weigh disadvantages resulting to the community from enforcing the regulations against the advantages accruing to the community from that industry as heretofore conducted, and decide which is more important and which therefore ought to prevail. It has been declared in art. 50 by the people as the sovereign power to be a governmental policy of the Commonwealth that there may be restriction and regulation of advertising on private land within public

view. Appropriate statutes and rules to enforce that policy fall within the competency of the legislative department of the government. The court has no jurisdiction to weigh in the balance the economic advantage or disadvantage of the restrictions and regulations adopted and adjudicate which is in the public interest. That is a prerogative of the legislative department of government in determining the particular restrictions and regulations to be framed. The court cannot set aside a determination legislative in nature unless it is clearly a mere arbitrary or irrational exercise of power having no substantial relation to the public welfare. If on that point the legislative action to be taken was fairly debatable, the judgment finally exercised is not to be superseded on grounds of expediency. In such circumstances the court will not substitute its opinion "for that of the legislative body charged with the primary duty and responsibility of determining the question." *Zahn* v. *Board of Public Works*, 274 U. S. 325, 328. *Gant* v. *Oklahoma City*, 289 U. S. 98, 102. Evidence on this point was rightly excluded. *Powell* v. *Pennsylvania*, 127 U. S. 678. *Price* v. *Illinois*, 238 U. S. 446. *James Everard's Breweries* v. *Day*, 265 U. S. 545, 559. *Hebe Co.* v. *Shaw*, 248 U. S. 297, 303. The substance and effect of such evidence were that outdoor advertising ought not as matter of policy to be restricted and regulated as prescribed by art. 50. That is not a judicial question in this forum. It was settled adversely to the contention of the plaintiffs by the ratification of art. 50. The cases at bar are distinguishable from cases like *Weaver* v. *Palmer Brothers Co.* 270 U. S. 402, and *Washington* v. *Fairchild*, 224 U. S. 510, where statutes were held to be arbitrary. Laws of the nature here assailed can hardly be held to be arbitrary or unreasonable. *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526. *St. Louis Poster Advertising Co.* v. *St. Louis*, 249 U. S. 269.

18. The plaintiffs have devoted considerable argument to the motive and reasons which actuated the defendants in adopting the regulations. The validity and meaning of those regulations must be determined according to their words; they cannot be affected by the reasons honestly

motivating those who framed them. *Boston* v. *Talbot,* 206 Mass. 82, 91. *Selectmen of Natick* v. *Boston & Albany Railroad,* 210 Mass. 229, 233. *Loring* v. *Young,* 239 Mass. 349, 368. *Standard Underground Cable Co.* v. *Attorney General,* 1 Dick. (N. J.) 270, 276–277. Likewise, the individual opinions of the several defendants as to scenic beauty and its importance to the general welfare are of no consequence as matter of law. The rights of parties depend upon acts done, not upon the opinions of those who do those acts. *Ayer* v. *Commissioners on Height of Buildings in Boston,* 242 Mass. 30, 35. There is nothing in *Yick Wo* v. *Hopkins,* 118 U. S. 356, or *Dobbins* v. *Los Angeles,* 195 U. S. 223, which as applied to the facts here disclosed requires a different result.

19. The circumstance that the licenses and permits are revocable and expire annually does not render that rule void. That provision is common with respect to many different kinds of business required to be licensed under statutes, and never has been thought to be unreasonable.

20. It does not seem necessary to examine in detail the other rules and regulations. We are of opinion that, so far as not discussed specifically or concluded by necessary implication in other parts of this opinion, they are conjunctively and disjunctively within the scope of the enabling statute and are reasonable so far as they have been assailed and affect the rights and property of the plaintiffs, and are protected by art. 50.

21. The Concord by-law makes in substance the same fixed provisions respecting size and spacing of billboards and their setback from the boundary lines of highways and from the corner of intersecting highways and from public parks, playgrounds and other public grounds and their exclusion from residential blocks as do the rules and regulations of the department of public works. The by-law provides also that no billboard, sign nor advertising device shall be erected, displayed or maintained until a permit therefor has been issued by the State department of public works after a public hearing by the selectmen and the transmission to the department of the results

thereof including, in the event of disapproval, a statement of the reasons therefor. There was a proviso that the by-law should not take effect as to existing billboards and advertising devices until one year after its effective date. It contains the exceptions prescribed by G. L. (Ter. Ed.) c. 93, § 30. It is provided by § 2D of the rules and regulations of the commissioners of public works that, upon application being made to the division for a permit, notice thereof shall be given to the city or town where the advertising device is to be located with further provisions as to objections by such city or town. This by-law is not inconsistent with the provisions of the governing statute or with the rules and regulations, but is in harmony with them. Such by-law is expressly permitted by G. L. (Ter. Ed.) c. 93, § 29. It was duly adopted at a town meeting and its validity in this respect is not contested. It is somewhat more drastic in that it makes no provision for license and permit, and no provision or exception touching business districts. These differences do not render it invalid. It is matter of common knowledge that Concord has a small area devoted to strictly business activities. It has no area where there is business congestion. On the contrary, the town has exceptional attractiveness to the general public. It was the scene of a notable battle of the Revolution. Many of wide and enduring fame in literature and renown in statecraft have made their homes in the town and their mortal remains lie buried in its cemetery. The town is itself an historic and literary shrine of singular interest. It is common observation that for these reasons large numbers of people resort to it year after year. Certain billboards and advertising devices maintained in Concord prior to the adoption of the by-law, and for which renewal permits were refused, violated some of the fixed restrictions. With respect to these the master made this finding: "Although I find . . . that the rules and regulations tend to promote public safety when they require that signs, billboards and other advertising devices be limited in size and set back from the line of the highway a distance which would not be beyond the clear normal vision

of travellers generally, yet I am unable to find upon the evidence before me that either of these particular signs or billboards as located and maintained in the town of Concord tends seriously to affect the safety of travellers upon the highway, or unduly to withdraw the attention of a reasonably careful driver of vehicles from the business of driving safely. Nor can I find upon the evidence before me that these particular signs and billboards are appreciably detrimental to property values in the sections in which they are located." We are of opinion that in a town like Concord the denial of renewal permits in the circumstances is not beyond the scope of art. 50, the governing statute, the by-law and the regulations, and that it violates no right secured to the plaintiffs by the Constitution. *Opinion of the Justices*, 234 Mass. 597, 604–611. *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526. *St. Louis Poster Advertising Co.* v. *St. Louis*, 249 U. S. 269. *Nebbia* v. *New York*, 291 U. S. 502.

22. In October, 1926, the plaintiff Brink was granted a permit to erect and maintain an advertising sign of steel construction on the roof at the rear of the building at 6 Beacon Street, Boston, near the State House and facing Boston Common. This is an office building in a district of business character abutting on the Granary Burying Ground. The sign was erected in 1927 in accordance with the permit at an approximate original cost of $35,000. It is a skeleton electric sign of steel, eighty-five feet long and sixty-five feet high, securely fastened to the building. It is distant four hundred feet from the boundary of a public way and the bottom of the sign is one hundred feet from the ground. On its face the trade name of an automobile is displayed in large metallic letters. The sign is in a dominating and conspicuous location and commands a view from the Common and Public Garden as well as from many streets. It is plainly visible by day for a long distance and at night for a radius of miles. At night its face is brilliantly illuminated by colored lights in a spectacular manner, and is animated by electrical devices forming words and causing continuous changes in the display.

A contract was made to pay $1,000 a month for this advertisement. The lessee or licensee of the sign, in May, 1927, hired a single room used as a meeting place for salesmen and their prospective customers in the building upon the roof of which the sign is located. The permit for this sign expired by its terms on June 30, 1927. Seasonable application was made for a renewal permit. Written protests were received against such renewal from many citizens and from numerous civic associations and societies. The application had the approval of the mayor of Boston and of various citizens and certain business interests. A public hearing was given at the request of nearby residents and statements and arguments were heard for and against the application. The chief grounds of objection were that the sign was unsightly and that it was an inappropriate and obnoxious intrusion into that locality, and especially that it was a serious detriment and affront to the dignity of the Commonwealth because of its close proximity to the State House. These were the reasons for the negative vote cast on the application. In June, 1927, there being but two commissioners because of a death, no renewal permit was granted because the remaining two members of the board were equally divided in opinion. No other application for a renewal permit has ever been filed. The sign has continued in position by reason of the injunction. The refusal to renew the permit rested solely on the grounds of taste and fitness. It was conceded by the defendants and found by the master that this sign as erected and maintained has not been at any time or in any respect either a fire hazard or a menace to public health, morals or public safety; that it is not within fifty feet of another sign, nor does it obstruct any other sign, nor is it within three hundred feet of any public park or reservation. The master also found that it does not affect the safety of travellers upon the highway, nor tend unduly to withdraw the attention of a reasonably careful driver of vehicles from driving safely. It is plainly visible from many highways and is thrust upon the attention of travellers on them.

A sign of this nature is within the sweep of the terms of

art. 50 as to regulation and restriction of "Advertising . . . on private property within public view." It is clear from the findings that this sign does not "advertise or indicate either the person occupying the premises in question or the business transacted thereon" and hence is not protected by G. L. (Ter. Ed.) c. 93, § 30. This sign does not direct any one to the office in the Beacon Street building of the company manufacturing the automobile; it was not intended and is not understood to indicate that such an office is there maintained. The statute, if construed as exempting this sign from regulation, would create an unfair and unequal classification. *Vigeant v. Postal Telegraph Cable Co.* 260 Mass. 335.

When the permit for this sign was granted, the governing statute and the rules and regulations were in force. The original permit expired by the terms of § 2G of the rules and regulations, as well as by its own limitation, on June 30, 1927. This plaintiff accepted his permit to erect the sign subject to all the infirmities inherent in it under the governing statute and rules and regulations. It was subject to expiration at a fixed time and to the necessity for renewal. The original granting of the permit carried no implication of law that it would be renewed. Street railways in this Commonwealth hold their locations in public ways under a tenure no more secure than a license or permit subject to revocation. Many licensees make investments in reliance upon the hope of renewal but without right to renewal. *Burgess v. Mayor & Aldermen of Brockton,* 235 Mass. 95, 101–102, and cases cited. The request for a permit to build the sign and acceptance of the permit granted in accordance with the rules and regulations in substance and effect bound Brink by its terms. He cannot now assert a permanent right to maintain the sign contrary to the conditions on which he was permitted to erect it. *Barnes v. Springfield,* 268 Mass. 497, 503, and cases cited. *Bushway Ice Cream Co. v. Fred H. Bean Co.* 284 Mass. 239, 243. So far as concerns the Constitution of the United States, this point seems to be covered by *Federal Radio Commission v. Nelson Brothers Bond &*

*Mortgage Co.* 289 U. S. 266. The location of this sign is in the part of Boston upon which much care and thought have been bestowed for the general welfare covering many years. The Common has been a cherished public possession for three centuries. It has been adorned by monuments and has been protected by ordinance. The privilege to speak or even to preach on the Common has been restricted. *Commonwealth* v. *Davis,* 140 Mass. 485. *Commonwealth* v. *Davis,* 162 Mass. 510; affirmed in *Davis* v. *Massachusetts,* 167 U. S. 43. The adjacent Public Garden has been embellished by important statues and beautiful trees and flowers. Much skill and thought as well as public money have been expended in its development. The State House by its commanding position, its distinguished architecture, and above all by its civic importance as the home of the executive and legislative departments of government, is entitled to surroundings not detracting from its dignity, so far as those surroundings depend upon a license or permit from the Commonwealth. We think that refusal on grounds of fitness and taste to renew the permit to the plaintiff Brink was within the scope of the authority conferred on the defendants by the statute and the rules and regulations, and that such refusal violated no constitutional rights of this plaintiff. The underlying reasons have been stated at length earlier in the part of this opinion dealing with preservation of territory of unusual scenic beauty and places of historic interest from the intrusion of commercial advertising. *Thomas Cusack Co.* v. *Chicago,* 242 U. S. 526. *St. Louis Poster Advertising Co.* v. *St. Louis,* 249 U. S. 269. *Nebbia* v. *New York,* 291 U. S. 502. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. *Opinion of the Justices,* 234 Mass. 597, 604–611, and cases there reviewed.

23. The plaintiffs have stated that their objections to the master's original and supplemental reports "are so many and so lengthy that it is both impracticable and unnecessary to print and discuss them in this brief." Manifestly this court cannot be expected to deal with them in any detail in an opinion. *Mullen* v. *Board of Sewer Commissioners of Milton,* 280 Mass. 531, 537. The essential

and underlying principles (except those raised under the Fourteenth Amendment to the Constitution of the United States to be considered later) which govern the disposition of the cases have already been discussed. Findings by the master of a general and prefatory nature as to widespread dislike of billboards, regulations concerning billboards in other States, the number of votes cast on art. 50, and others of similar nature are scarcely more than matters of common knowledge, might have been omitted and have no bearing upon the decision of the cases. That beautiful scenery is of economic value to the Commonwealth may be subject of judicial notice. Other objections so far as they require discussion have been dealt with in other parts of this opinion. All these objections have been considered. All arguments in support of them have been weighed. None of them have been overlooked. It is not necessary to review or to discuss them at further length. Separately and collectively they do not warrant a setting aside of the findings of the master or a refusal to confirm the original or supplemental reports respecting the underlying grounds on which the decision of these cases rests.

The grounds upon which the validity of the rules and regulations rests have been set forth at large. The extent to which each ground was intended to support each rule is a vain inquiry. The rules as a whole are not open to the objections urged. The findings of fact set forth in the original and supplemental reports are stated ·by the master to be founded on all the evidence. The master must have made many observations on his extended view intended by the parties to enlighten his judgment, and in fact they may have aided him in reaching his conclusions. No specific evidence requested by the plaintiffs has been omitted from the reports. In these circumstances, as already pointed out, under settled practice the findings must be accepted as true. An examination of the record convinces us that the findings cannot rightly be held to be plainly wrong. It is necessary only to state this conclusion without attempting to summarize the evidence. The brief interlocutory decree granting the first motion to recommit

the case to the master was not designed to compel compliance by the master with the large number of matters both of fact and of law set forth in that motion. Even assuming that it is susceptible of that interpretation and that there have been failures on the part of the master so to comply, there is no occasion for further hearing before the master. So far as there has been such failure, the decree granting the motion to recommit may be regarded as modified. The findings recited in the report do not appear to be tainted by material errors of law, they cover the essential issues raised and are adequate to show that the plaintiffs are not entitled to the relief sought in these proceedings. *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 483, 484.

24. It remains to deal with procedural and evidential matters not already considered. The original rule to the master as has been stated required him to report his findings "together with such facts and questions of law and portions of the testimony as any party may in writing request." Under this form of reference the plaintiffs had a right upon proper request to have the master report all questions of law which arose in the course of his doing what he was required to do, namely, to find the facts. He was not required to formulate legal theories and reasoning processes which guided him in admitting or excluding evidence. He was not obliged to pass upon legal questions connected with the case on which his opinion might be asked. It was not his duty to state, summarize or discuss the legal issues upon which the court must pass. *Cook* v. *Scheffreen*, 215 Mass. 444, 447. *Warfield* v. *Adams*, 215 Mass. 506, 519, 520. *Bradley* v. *Borden*, 223 Mass. 575. The plaintiffs presented at the hearing on recommittal a large number of requests for rulings of law aggregating as numbered one hundred thirty-one in two different schedules; one embodied requests for rulings sought, and the other requests for a statement of rulings specified in great detail as already made. Most of the latter were denied, some of the former were granted and others denied. Many of these were made the basis of objections. Such rulings

not already considered as are open to the plaintiffs will be discussed only so far as they affect the underlying grounds for this decision. There was no error in the treatment of the demands and customs of national advertisers with respect to the rights of the plaintiffs. It is plain from the findings of the master that a substantial part of the business of the plaintiffs is derived from national advertisers. The advertising done in this Commonwealth is local and not interstate business. The precise extent of that business and the nature of its demands further than is shown in the original and supplemental reports of the master are not relevant to the validity of police regulations as to the maintenance of advertising devices within this Commonwealth. That such national advertisers were an important factor in the business of the plaintiffs is established by the facts found. Further facts as to the extent of the business and the character of such advertisers are not pertinent to the issues here raised. Opinion evidence touching the probability that such patronage would be withdrawn from the plaintiffs if they conformed to the rules and regulations properly might be excluded as matter of discretion. It was not evidence of facts. It was prophecy as to conditions which no one had tried to meet. Evidence was introduced as to the available advertising space in conformity to the rules and regulations in some localities. The results of a survey of Lowell by an expert, with this end in view, were put in evidence by the plaintiffs and were favorable to their contentions. The extent to which such evidence was required to be received was discretionary. Moreover the force and effect of such evidence were a matter of fact to be determined by the master. The same is true as to estimated expenses of readjustment of advertising devices to meet the requirements of the rules and regulations. Manifestly such readjustment would be costly. In the exclusion of that evidence offered by the plaintiffs there has been no violation of the principle of *Saunders* v. *Shaw*, 244 U. S. 317, to the effect that a case ought not to be decided finally upon evidence which a party had no opportunity to meet. The findings already recited tend to show

that the business of the plaintiffs will be seriously affected. These arguments as to alleged errors in exclusion of evidence ultimately rest upon the question of law whether the possible or prospective pecuniary loss to the plaintiffs shows the rules and regulations to be unreasonable and unconstitutional. As to this precise point the decision in *St. Louis Poster Advertising Co.* v. *St. Louis*, 249 U. S. 269, is decisive against the plaintiffs. It there was said at page 274: "If the city desired to discourage billboards by a high tax we know of nothing to hinder, even apart from the right to prohibit them altogether asserted in the *Cusack Co. Case*," 242 U. S. 526, 531. It is not a constitutional objection to police regulations otherwise valid that a particular business will not pay when conducted in conformity to their provisions. *Morris* v. *Duby*, 274 U. S. 135, 144. *Fischer* v. *St. Louis*, 194 U. S. 361. *Hadacheck* v. *Los Angeles*, 239 U. S. 394. *Reinman* v. *Little Rock*, 237 U. S. 171. *Nebbia* v. *New York*, 291 U. S. 502.

There was no error in the admission of evidence as to observation and opinion from engineers who had made special studies as to traffic hazards touching the effect of billboards on the safety of travel on highways. Other witnesses connected with accident insurance companies rightly were not permitted to give opinion evidence on the subject although allowed to testify as to what their records showed as to causes of accident. There was ample evidence that the basis for the rules and regulations was not merely potential or unrealized, but actual, dangers or conditions.

25. The plaintiffs set forth in their several bills of complaint three hundred sixteen different applications for permits or renewals of permits in locations within public view alleged to have been denied by the defendants because in conflict with all or some of the rules and regulations. These by agreement of parties were taken as typical cases fully representative of many others and evidence in these particulars was confined to these as test cases. The present proceedings were instituted to determine, as applied to the business of the plaintiffs, the constitutionality of the rules

and regulations adopted by the defendants and of the by-law passed by the town of Concord, of the statute pursuant to which they were adopted and passed, and of art 50. These general questions have been determined except that the alleged conflict of art. 50 with the Constitution of the United States will be considered later. The findings of the master touching the so called test cases illustrative of the different advertising devices and of the rules and regulations affecting them have been examined and given weight so far as material with that end in view. No attempt will be made to pass upon each of these test cases or to deal with defects in the administration of the rules and regulations. The reports of the master are sufficiently full as to these test cases. The question, whether the records of the defendants as to reasons for decision or otherwise with respect to refusals to grant permits for new locations for advertising devices or renewals for existing locations are adequate to protect the rights of the plaintiffs, need not be decided. Those matters are not appropriate to proceedings like these at bar. Wrongs of that nature, if any, which the plaintiffs may suffer or have suffered may be redressed in different proceedings brought to rectify particular errors committed by the defendants. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 397. *Morley* v. *Police Commissioner of Boston,* 261 Mass. 269, 278. Whatever defects of procedure on the part of the defendants are disclosed on the record fall short of showing any want of validity in the rules and regulations or any purpose on the part of the defendants not to perform the duties incumbent on them fully and fairly and in accordance with law. Therefore they do not support the main contention of the plaintiffs that the rules and regulations according to their true interpretation violate the constitutional rights of the plaintiffs.

There was no error in the denial of the second motion to recommit. The disposition of such a motion commonly rests in sound judicial discretion. Not only was there no abuse of discretion, but it appears to have been wisely exercised. The report of the master as to the test cases was sufficiently full for the purposes of the issues raised

by these proceedings. The same is true of other grounds set forth in this motion. *Daniels* v. *Daniels,* 240 Mass. 380, 385. *Chamberlain* v. *Henry,* 263 Mass. 63.

26. The plaintiffs contend that the rules and regulations by their terms and as interpreted and practically applied by the defendants violate the rights guaranteed to them by the Fourteenth Amendment to the Constitution of the United States in that they are deprived of their property without due process of law and are denied the equal protection of the laws. We are of opinion that this contention cannot be sustained.

This contention is to be considered without attributing superior force to art. 50. The fact that the right to make the rules and regulations is conferred by the Constitution of this Commonwealth cannot protect them against the Federal Constitution. A State has no power to violate by its Constitution a provision of the Constitution of the United States. The Constitution of the United States within its sphere is supreme over all the people and over every instrumentality of government established by the several States. The Constitution of a State stands no higher or stronger in this respect than any other act of a State. They must all conform to the governing provisions of the Federal Constitution. *Opinion of the Justices,* 234 Mass. 597, 607, and cases collected and reviewed. *Florida* v. *Mellon,* 273 U. S. 12, 17. *Wisconsin* v. *Illinois,* 281 U. S. 179, 197. Several cases concerning billboards have been considered by the Supreme Court of the United States. It was said in *Thomas Cusack Co.* v. *Chicago,* 242 U. S. 526, 530, that prohibition against the erection of billboards "in residence districts of a city in the interest of the safety, morality, health and decency of the community" was justifiable and violated no constitutional rights of the owners of billboards. Nothing can be more drastic than absolute prohibition. That statement was repeated with approval in *St. Louis Poster Advertising Co.* v. *St. Louis,* 249 U. S. 269, 274. In the *Thomas Cusack Co.* case there was evidence that the billboards became screens for filth, served as protection for immoral practices, and were a

shield for criminals. In the *St. Louis* cases, two bills in equity of substantially the same tenor by the same plaintiff against the same defendant were argued together in the Supreme Court of the United States: one was begun in the State court of Missouri, and the other in the District Court of the United States. They were heard and decided upon bills and demurrers. There was no evidence. The allegations of the bills necessarily were accepted as true. Those allegations are not printed in 249 U. S. 269, but are set forth at length in 195 S. W. 717, where is reported the decision of the Supreme Court of Missouri, which was brought to the United States Supreme Court on writ of error. Both bills were set forth in the records presented to the United States Supreme Court. Those allegations are plenary to the effect that the business of outdoor advertising as conducted by that plaintiff was by means of structures safe in construction, of fireproof material, kept constantly in sound, permanent and sanitary condition, and that none of them had ever been charged by the city officials to be a nuisance or a menace, or detrimental to the public welfare or morals or safety of the city or any of its inhabitants; that the plaintiff had contracts running from six months to three years binding it to maintain advertisements upon its boards, and that by enforcement of the ordinance the plaintiff would be put out of business, its business irretrievably ruined, its profits dissipated, and the means of livelihood of its employees taken away. No business could be more clean, moral, sanitary and free from every contaminating and undesirable attribute than that described in the allegations of that bill. The ordinance there assailed contained regulations as to sizes of billboards and requirements for permit and fee, for open spaces around billboards, for setback from the street line and sides of the lot and other buildings. Nevertheless, it was held that billboards might be put in a class by themselves and prohibited "in residence districts of a city in the interest of the safety, morality, health and decency of the community," and that the allegations of the bills showed no violation of the plaintiff's constitutional rights. It was

said further that because some details of the ordinance have "aesthetic considerations in view more obviously than anything else" did not affect the conclusion. Notwithstanding the differences in the facts set forth in allegations of the bills from those disclosed on the record in *Thomas Cusack Co.* v. *Chicago,* 242 U. S. 526, the same result was reached as in the latter case. In *Seattle Trust Co.* v. *Roberge,* 278 U. S. 116, in dealing with the prohibition of a home for old people, it was said at page 122: "The facts shown clearly distinguish the proposed building and use from such billboards [as were prohibited in *Thomas Cusack Co.* v. *Chicago,* 242 U. S. 526] or other uses which by reason of their nature are liable to be offensive." The zoning ordinance which was held to be valid in *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, absolutely prohibited billboards in several of the zones. The same is true of the zoning ordinance under review in *Wulfsohn* v. *Burden,* 241 N. Y. 288. In one of the most recent discussions of the extent of the police power, *Nebbia* v. *New York,* 291 U. S. 502, 525, occurs this language: "the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. . . . The court has repeatedly sustained curtailment of enjoyment of private property, in the public interest. The owner's rights may be subordinated to the needs of other private owners whose pursuits are vital to the paramount interests of the community. The state may control the use of property in various ways; may prohibit advertising bill boards except of a prescribed size and location, or their use for certain kinds of advertising; may in certain circumstances authorize encroachments by party walls in cities; may fix the height of buildings, the character of materials, and methods of construction, the adjoining area which must be left open, and may exclude from residential sections offensive trades, industries and structures likely injuriously to affect the public health or safety; or may establish zones within which certain types of buildings or businesses are permitted

and others excluded." In that case, at pages 526–530, is a review of many decisions where interference with private rights by the exercise of the police power has been upheld. On page 528 occurs this footnote in support of the statement: "Certain kinds of business may be prohibited": "Sales of stock or grain on margin, *Booth* v. *Illinois*, 184 U. S. 425; *Brodnax* v. *Missouri*, 219 U. S. 285; *Otis* v. *Parker*, 187 U. S. 606; the conduct of pool and billiard rooms by aliens, *Clarke* v. *Deckebach*, 274 U. S. 392; the conduct of billiard and pool rooms by anyone, *Murphy* v. *California*, 225 U. S. 623; the sale of liquor, *Mugler* v. *Kansas*, 123 U. S. 623; the business of soliciting claims by one not an attorney, *McCloskey* v. *Tobin*, 252 U. S. 107; manufacture or sale of oleomargarine, *Powell* v. *Pennsylvania*, 127 U. S. 678; hawking and peddling of drugs or medicines, *Baccus* v. *Louisiana*, 232 U. S. 334; forbidding any other than a corporation to engage in the business of receiving deposits, *Dillingham* v. *McLaughlin*, 264 U. S. 370, or any other than corporations to do a banking business, *Shallenberger* v. *First State Bank*, 219 U. S. 114." The ruin of a particular business as the result of the exercise of the police power does not render the statute or ordinance invalid. *Morris* v. *Duby*, 274 U. S. 135, 144. *Reinman* v. *Little Rock*, 237 U. S. 171. *Hadacheck* v. *Los Angeles*, 239 U. S. 394. *Gant* v. *Oklahoma City*, 289 U. S. 98, 102–103. In *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398, at page 438, occurs this statement: "where the protective power of the State is exercised in a manner otherwise appropriate in the regulation of a business it is no objection that the performance of existing contracts may be frustrated by the prohibition of injurious practices. *Rast* v. *Van Deman & Lewis Co.* 240 U. S. 342, 363; see, also, *St. Louis Poster Advertising Co.* v. *St. Louis*, 249 U. S. 269, 274."

It must, in our opinion, be regarded as settled by these decisions of the Supreme Court of the United States that billboard and like advertising devices upon private property have such demonstrated potentialities for harm to the general welfare that they may be prohibited in certain

localities by public authority. The principle has become so thoroughly established that billboards are mentioned as illustrations of an appropriate subject for regulation and restriction. Advertising devices such as those of the plaintiffs relate to the promotion of trade and commerce. The exclusion of them from regions of natural scenic beauty and historic interest does not exceed the reasonable bounds of the police power. The circumstance that in the cases at bar there have been few instances where billboards have been used to the public harm by the evil minded is not decisive. They do not approach the absolute freedom from obnoxious features disclosed by the record in *St. Louis Poster Advertising Co.* v. *St. Louis*, 195 S. W. 717, affirmed in 249 U. S. 269. The liability to such nuisance was there held to be sufficient ground to justify a highly drastic prohibitive ordinance respecting billboards. The grounds upon which, in our opinion, rests the validity of these rules and regulations embrace safety of public travel from distractions likely to cause injury, protection of the travelling public from annoying obtrusion of commercial propaganda, and the other factors already mentioned. They are not confined to the limits of possibility of nuisance although also including that.

The conclusion that no rights secured to the plaintiffs by the Fourteenth Amendment to the Constitution of the United States have been violated is supported in principle by other decisions. *Chicago, Milwaukee & St. Paul Railway* v. *Minneapolis*, 232 U. S. 430. *Missouri Pacific Railway* v. *Omaha*, 235 U. S. 121. *Miller* v. *Schoene*, 276 U. S. 272. *Federal Radio Commission* v. *Nelson Brothers Bond & Mortgage Co.* 289 U. S. 266.

The record, in our opinion, fails to show that the plaintiffs have not been accorded the equal protection of the laws. The classification of billboards and other outdoor devices for advertising, when carried on as a business, to be treated separately and apart from other business, plainly is warranted. *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526. The exempted signs do not contain any element of favoritism. The rules and regulations on their face are

equal and operate indiscriminately. The statute exempts signs and devices advertising the person occupying or the business conducted on the premises, advertising the premises or any part thereof for sale or to let, and advertising on certain structures of common carriers. There is a fundamental difference between these classes of advertising and the business of advertising as carried on by the plaintiffs. *Ozan Lumber Co.* v. *Union County National Bank of Liberty*, 207 U. S. 251. *Barrett* v. *Indiana*, 229 U. S. 26, 30. *Hodge Drive-It-Yourself Co.* v. *Cincinnati*, 284 U. S. 335. *Continental Baking Co.* v. *Woodring*, 286 U. S. 352. *Packer Corp.* v. *Utah*, 285 U. S. 105. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345.

The classification of those carrying on the business of outdoor advertising as distinguished from those not engaged in that business and advertising only temporarily is permissible. It involves no inequality before the law. Advertising for a local cattle show or fair, or the itinerant circus, is different from the permanent maintenance of billboards and other advertising devices. That difference is sufficient basis for a valid classification. *Bryant* v. *Zimmerman*, 278 U. S. 63, 73–75. *Bekins Van Lines, Inc.* v. *Riley*, 280 U. S. 80. *State Board of Tax Commissioners* v. *Jackson*, 283 U. S. 527, 537–541. *Advance-Rumely Thresher Co. Inc.* v. *Jackson*, 287 U. S. 283, 291. *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114. *Commonwealth* v. *Libbey*, 216 Mass. 356, 358. *Commissioner of Corporations & Taxation* v. *Coöperative League of America*, 246 Mass. 235, 239. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 14–15. This point seems to be so completely covered by authority as not to require further discussion.

While, as already pointed out, the circumstance that art. 50 is a part of the Constitution of the Commonwealth gives it no immunity from being brought to the test of conformity to the provisions of the Federal Constitution, the tendency of recent decisions of the United States Supreme Court has been to accept as true in its application to local conditions the declaration embodied in a constitution by the people of a State that the public exigency re-

quires the specified limitations of private rights and the use of private property, especially when supplemented by action by the legislative department of the State. *Green* v. *Frazier*, 253 U. S. 233, 234–240. *Nebbia* v. *New York*, 291 U. S. 502, 538. *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526, 530–531. *Opinion of the Justices*, 237 Mass. 598, 612, and cases cited.

It is not necessary to discuss further the points raised and the arguments presented by the plaintiffs. After careful consideration of them all we are of opinion that the plaintiffs are not entitled to relief.

27. There were filed demurrers which were overruled by interlocutory decrees without prejudice to the right to raise the same questions by answer. Although the defendants appealed from these interlocutory decrees and the reservation includes issues thereby raised, they have not been argued by the defendants and need not be considered. In each case the interlocutory decree may be affirmed. Decrees may be entered in each case confirming the interlocutory decrees, denying the second motion to recommit the report to the master and confirming the original and supplemental reports of the master. Final decrees may be entered dismissing the bills.

*Ordered accordingly.*